J-S19028-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ERIC ROGERS, | : | |
| | : | |
| Appellant. | : | No. 342 EDA 2017 |

Appeal from the Judgment of Sentence July 2, 2015
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0000721-2013,
CP-51-CR-0001717-2013, CP-51-CR-0005681-2012,
CP-51-CR-0007377-2012, CP-51-CR-0007563-2012.

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STRASSBURGER*, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JULY 10, 2019**

From May of 2011 through March of 2012, Eric Rogers – a serial rapist – attacked, robbed, and sexually assaulted five females (two of whom were teenagers).  He often left DNA behind as proof of the encounters.  Rogers thus admitted the sex but denied that he forced himself upon the women.  Instead, he claimed some of the women solicited him.  Rogers tried to introduce evidence of their prior convictions for prostitution.  The trial court denied his request.

In a bench trial, the women testified that Rogers sexually assaulted them, and the Commonwealth's experts provided scientific evidence to bolster those accusations.  The trial judge disbelieved Rogers' story of consensual prostitution, credited the women's assault allegations, and convicted Rogers

_____
*   Retired Senior Judge assigned to the Superior Court.

of 46 crimes: four counts of rape, three counts of aggravated assault, three counts of robbery, two counts of involuntary deviate sexual intercourse, four counts of sexual assault, two counts of theft by unlawful taking, three counts of receiving stolen property, four counts of unlawful restraint, four counts of indecent assault, two counts of indecent exposure, four counts of simple assault, three counts of recklessly endangering another person, two counts of false imprisonment, two counts of terroristic threats, two counts of corruption of minors, one count of unlawful contact with a minor, and one count of impersonating a public servant.[1]  The trial court sentenced Rogers to an aggregate of 55 to 178 years of incarceration (about 1 to 4 years *per* crime).  Rogers appeals, *nunc pro tunc*,[2] from that judgment of sentence.  For the reasons below, we affirm.

The trial court, in its 1925(a) Opinion related the facts of Rogers' first rape as follows:

_____

[1] **See** 18 Pa.C.S.A. § 3121(a)(1); 18 Pa.C.S.A. § 2702(a)(1); 18 Pa.C.S.A. § 3701(a)(1)(i); 18 Pa.C.S.A. § 3123(a)(1); 18 Pa.C.S.A. § 3124.1; 18 Pa.C.S.A. § 3921(a); 18 Pa.C.S.A. § 3925(a); 18 Pa.C.S.A. § 2902(a)(1); 18 Pa.C.S.A. § 3126(a)(2); 18 Pa.C.S.A. § 3127(a); 18 Pa.C.S.A. § 2701(a)(1); 18 Pa.C.S.A. § 2705; 18 Pa.C.S.A. § 2903; 18 Pa.C.S.A. § 2706(a)(1); 18 Pa.C.S.A. § 6301(a)(1)(i); 18 Pa.C.S.A. § 6318(a)(1); **and** 18 Pa.C.S.A. § 4912.

[2] Rogers filed a single notice of appeal to encompass all five of his trial court docket numbers.  However, he appealed long before **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) (mandating that we quash appeals violating Pennsylvania Rule of Appellate Procedure 341's requirement that an appellant file separate notices of appeal for each docket number).  **Walker** only applies prospectively.  **See id.**  Thus, Rogers' one notice of appeal does not force us to quash his appeal.

C.B. encountered [Rogers] at approximately 2:00 A.M. on May 18, 2011 . . . [She] was walking home from her friend's house when she saw [Rogers] standing at an ATM. As C.B. walked by, [he] asked her if she wanted to make some money. C.B. responded that she had her own money. [Rogers] suddenly grabbed her, dragged her to a nearby yard, and wrapped his arm securely around her neck. C.B. could not breathe and temporarily lost consciousness.

When she came to, [Rogers] was on top of her. He wrapped both hands around her neck and began choking her again. He threw her against a set of steps, took his penis out of his pants, and forced it into her mouth. As he did so, he continuously punched C.B. on the side of her head. [Rogers] turned C.B. around and forced his penis into her vagina and then into her anus, continuing to beat her as he did so. During the assault, [Rogers] whispered into C.B.'s ear, "You know you're going to die tonight." N.T. 2/10/15, at 33.

Before leaving, [Rogers] took C.B.'s money. When C.B. made her way home, she called the police. *Id.* at 25-38. C.B. was given a sexual-assault examination at Thomas Jefferson University Hospital. A sperm specimen was taken from her underwear and tested positive for the presence of [Rogers'] DNA. *Id.* at 92, 97, 105.

Trial Court Opinion, 5/1/18, at 2.

A month later, Rogers attacked A.P. The trial court related that event as follows:

In the early morning hours of June 14, 2011, A.P. was sitting alone on a bench in Cobbs Creek Park in Philadelphia. [Rogers] came up behind her and asked her if she wanted to buy a [bus pass]. A.P. said she did not, and moved away from him. [Rogers] followed her. When A.P. tried to run away, [he] tackled her to the ground and began choking her.

[Rogers] started punching her in the head and told her he was going to "f**k her in the ass" and kill her. [He] pulled down A.P.'s pants, got on top of her, and forced his

penis into her anus. When he finished, he took her phone and access card and told her that if she followed him he would kick her in the face.

A.P. walked to a boarding house on 58th Street and told a woman there about the assault. The woman, in turn, called the police. After giving a statement to detectives, A.P. submitted to a medical examination. A perianal swab taken from A.P. tested positive for the presence of sperm and was later identified as matching [Rogers'] DNA. N.T. 2/10/15, at 122-137; 2/11/15, at 25-27.

Trial Court Opinion, 5/1/18, at 2-3.

That fall, Rogers assaulted M.H. in the following manner:

At approximately 9:30 A.M. on September 15, 2011, M.H. encountered [Rogers] in the area of 52nd Street and Wyalusing Avenue in Philadelphia. The two started a conversation as they walked. The conversation briefly stalled while [Rogers] took a phone call, but M.H. waited for him to finish so they could exchange contact information.

When [Rogers] ended his call, he gave M.H. a hug and grabbed her buttocks. Although M.H. told him to get off, [he] kept his hands on her and began to push her into a nearby alley. He stood behind M.H. and started to choke her. M.H. could not breathe and her vision began to grow blurry. [Rogers] released his grip and told M.H. not to make a sound, to pull down her pants, and to bend over.

M.H. did as he ordered, because she was afraid he was going to kill her. [Rogers] bent M.H. over a set of steps and penetrated her vagina with his penis. When he finished, he told her not to move. As M.H. stood there with her pants down, bent over, and afraid to move, [Rogers] took her credit cards, phone, and other personal items. He told her to close her eyes; warned her that he knew where she lived; and told her that, if she called the police, he would kill her and her children.

After [Rogers] left, M.H. did report the assault to the police. She underwent a medical examination, and swabs taken revealed positive results for sperm in her vagina,

vulva, perianal, and rectal areas, as well as on her left buttocks and right posterior thigh.  The DNA taken from the samples matched [Rogers'].  N.T. 2/9/15, at 23-35, 83-84.

Trial Court Opinion, 5/1/18, at 3-4.

In February 2012, Rogers sexually assaulted T.A., a minor.  The trial court described the attack against her as follows:

when she was 16-years-old, T.A. met [Rogers] at a library on 52nd Street in Philadelphia.  T.A. was attracted to [Rogers], and they exchanged contact information.

They met at the library again and from there went to [his] house.  T.A. was under the impression that they were going there to talk and get to know one another better.

When they got to [Rogers'] house, however, they went into his bedroom and [he] immediately told her to take off her pants. When T.A. refused, [Rogers] started to take them off.  He pushed her down on the bed, got on top of her, and forced his penis into her vagina.  T.A. did not try to get away, because she was afraid the violence would escalate.  T.A. waited to leave until [Rogers fell] asleep.

She did not tell anyone for approximately two months, because she was ashamed that she had voluntarily gone to his house.  T.A. and [Rogers] continued to communicate on Facebook.  [He] began to send T.A. demeaning and hostile messages, however, and soon cut off all contact.  After that, T.A. reported the assault to her family and then to the police.  N.T. 2/11/15, at 47-66.

Trial Court Opinion, 5/1/18, at 4.

Finally, Rogers attacked B.S., also a minor, a month later:

17-year-old B.S. would take the bus to her job at the King of Prussia Mall.  She met [Rogers] on the bus a couple of weeks prior to the assault.  On March 7, 2012, the night before the assault, [he] texted B.S. and asked her to come to his house, so they could take the bus together.  She

planned to walk to his house, where she would wait for the bus and then take it with him.

On March 8, when B.S. arrived at his house, [Rogers] started to kiss her neck. She asked him to stop, which he did. He told B.S. he was going to change his clothes. While [Rogers] went to the bedroom, B.S. went to the bathroom. When she came out, [he] was standing at the doorway.

He started to kiss her neck again and began to grab her groin and buttocks. B.S. told him to stop, but he pulled her into his bedroom. Despite her continued pleas to stop, [he] pushed B.S. onto the bed and tried to rip off her stockings. To muffle her cries, [Rogers] covered her face with a pillow. B.S. asked if she could go to the bathroom. [He] allowed her to go, but not before he had taken her phone.

When she came out of the bathroom, [Rogers] was standing at the doorway and again ripped at her stockings. B.S. asked that he use a condom if he was going to "do something." She hoped that this would give her an opportunity to get away. When [Rogers] went downstairs, B.S. tried to escape, but [he] stopped her, turned her around, bent her over, and forced his penis into her vagina.

Following the assault, [Rogers] asked B.S. if she was okay and repeatedly told her that she had "wanted it." He returned her phone to her, and they both walked to the bus.

[Rogers] and B.S. got off at their respective stops. B.S. called her cousin and then went to the police station. Following her interview with detectives, B.S. underwent a medical examination. N.T. 2/9/15, at 88-107, 116.

Trial Court Opinion, 5/1/18, at 4-5.

Rogers raises the following four appellate issues:

1. Did the trial court violate Rogers' constitutional rights by forbidding him from introducing evidence of some of his accusers' prior convictions for prostitution?

2. Was the Commonwealth's evidence legally insufficient?

3. Was the verdict against the weight of the evidence?

4. Did the trial court abuse its discretion in fashioning the sentence?

*See* Rogers' Brief at 5. We address these issues in order.

*1.   Rogers Has Not Preserved His Constitutional Issue for Review.*

As his first appellate issue, Rogers alleges the trial court violated the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania by excluding evidence that C.B., A.P., and M.H. had prior convictions for prostitution. He admits "that this Court has previously held that the fact that the complainant was convicted of prostitution was not probative where . . . consent is at issue in a rape prosecution, and that it is irrelevant to prove consent." Rogers' Brief at 25-26 (citing **Commonwealth v. Jones**, 826 A.2d 900 (Pa. Super. 2003), and **Commonwealth v. Dear**, 492 A.2d 714 (Pa. Super. 1985)). He believes that our precedents run afoul of both Confrontation Clauses.

This Court may not "decide the case on constitutional grounds unless defendant has first raised [the constitutional challenge] in the trial court." **Commonwealth v. Duncan**, 421 A.2d 257, 259 n. 3 (Pa. Super. 1980). In light of the prohibition against reaching constitutional questions for the first time on appeal, an appellant must demonstrate where in the record he has preserved such issues below. "Where under applicable law an issue is not reviewable on appeal unless raised or preserved below, the statement of the

case shall also specify . . . the places in the record where the matter appears (e.g. ruling or exception thereto, etc.) as will show that the question was timely and properly raised below so as to preserve the question on appeal." Pa.R.A.P. 2117(c)(4).

Rogers' Statement of the Case regarding the procedural posture of this constitutional question is only a brief summary with no citations to the record. He states:

> Prior to trial, [Rogers'] motion (and memorandum of law in support thereof) to admit evidence pursuant to the Pennsylvania Rape Shield Statute, was transferred for hearing and decision to the Honorable Daniel Anders. Judge Anders denied the motion, in substantial part, on February 9, 2015 (with additional rulings on February 10, 2015); the case was returned to Judge Woelpper for trial.

Rogers' Brief at 6.

Moreover, our independent review of the five certified records did not uncover Rogers' motion *in limine*, his memorandum of law, or Judge Anders' order denying his motion. Thus, we have no way of knowing what type of argument – constitutional or otherwise – that Rogers made to the trial court. Rogers had the burden of compiling and forwarding to this Court a complete record to facilitate our appellate review. An appellant's failure to transmit a complete record is fatal to his appeal. **See Commonwealth v. Preston**, 904 A.2d 1 (Pa. Super. 2006) (*en banc*).

Here, Rogers has not perfected the appellate record for our review, and we have no way of knowing whether he raised the waivable issue of the Rape

Shield Law's constitutionality below. He has therefore violated our Rules of Appellate Procedure and *Preston*. Accordingly, we dismiss his constitutional claim as waived.

*2.     Rogers Has Not Preserved His Sufficiency Issue for Review.*

Next, Rogers seeks to attack the sufficiency of the Commonwealth's evidence. **See** Rogers' Brief at 40-46. However, the trial court ordered Rogers to file a 1925(b) Statement, and his Statement contains no sufficiency-of-evidence claim. Thus, the trial court did not address the question of whether the Commonwealth presented sufficient evidence in its 1925(a) Opinion.

Whenever a trial judge orders an appellant to file a Statement of Matters Complained of on Appeal, Appellate Rule 1925(b) imposes the following:

> *(4) Requirements; waiver.*
>
> (i)     The Statement shall set forth only those rulings or errors that the appellant intends to challenge.
>
> \*     \*     \*     \*
>
> (vii)  Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.

Pa.R.A.P. 1925. **See also Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) (mandating "from this date forward, in order to preserve their claims for appellate review, Appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived.")

Because Rogers has again violated our Rules of Appellate Procedure, we dismiss his challenge to the sufficiency of the evidence as waived.

*3.      Rogers Has Not Preserved His Weight-of-the-Evidence Issue for Review.*

For his third issue, Rogers asks us to overturn the convictions as being against the weight of the evidence. **See** Rogers' Brief at 46-49. In compliance with Pennsylvania Rule of Criminal Procedure 607(A), Rogers raised this issue in his post-sentence motion. **See** Post-Sentence Motion at 4. However, in his 1925(b) statement, he did not adequately preserve it.

Rogers' 1925(b) statement asserts:

> 2. The verdicts were so contrary to the weight of the evidence as to shock one's sense of justice, where Ms. Paige's, Ms. Hart's, and Ms. Brown's testimony was vague, inconsistent, and incredible. New trials should have been granted in the interests of justice, so that right may prevail, as the fact finder's verdict based upon such testimony was speculative and conjectural.

Rogers' 1925(b) Statement at 2.

If an appellant does not "specify in his Rule 1925(b) statement which verdict or verdicts were contrary to the weight of the evidence and . . . neglected to offer specific reasons as to why those verdicts were contrary to the weight of the evidence," his 1925(b) statement "is too vague to allow the [trial] court to identify the issues raised on appeal . . . ." **Commonwealth v. Freeman**, 128 A.3d 1231, 1248-1249 (Pa. super. 2015). When this occurs, it "is the functional equivalent of no concise statement at all." **Id.** (quoting **Commonwealth v. Dowling**, 778 A.2d 683, 686 (Pa. Super. 2001).

Here, Rogers barely asserted any reasons in his 1925(b) statement for why the verdicts were against the weight of the evidence. He attacked the credibility of three witnesses but failed to explain what evidence contradicted the convictions so as to shock one's sense of justice. More importantly, Rogers did not indicate in his 1925(b) statement which of the verdicts he believed were against the weight of the evidence. Thus, he left the trial court to guess at which verdicts he desired to challenge on appeal and on what basis. By vaguely raising a weight issue in the 1925(b) statement, Rogers rendered it "the functional equivalent of no concise statement at all." ***Id.***

As we explained while addressing Rogers' sufficiency issue, we must dismiss any issue not successfully preserved in the 1925(b) statement as waived. Thus, Rogers has waived his weight-of-the-evidence claim.

*4.    The Trial Court Did Not Abuse Its Discretion in Sentencing Rogers.*

Finally, Rogers asks us to review his sentence, because he claims the trial court abused its discretion in fashioning it.

"A challenge to the discretionary aspects of sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." ***Commonwealth v. Lamonda***, 52 A.3d 365, 371 (Pa. Super. 2012) (*en banc*) (citation omitted). Before we may consider the merits of Rogers' fourth issue, he "must invoke this Court's jurisdiction by satisfying a four-part test." ***Commonwealth v. Moury***, 992 A.2d 162 (Pa. Super. 2010).

The test is:

> (1) whether Appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether Appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 909 A.2d 303 (Pa. 2006) (internal citations omitted). "Only if the appeal satisfies these requirements may we proceed to decide the substantive merits of Appellant's claim." ***Commonwealth v. Luketic***, 162 A.3d 1149, 1159-1160 (Pa. Super. 2017).

Rogers timely filed this appeal within 30 days of the trial court's granting him the right to appeal *nunc pro tunc*. He raised the discretionary aspects of his sentence in his post-sentence motion. And Rogers has included a Pa.R.A.P. 2119(f) Statement in his brief. He therefore satisfied the first three prongs of the test.

We now turn to the fourth prong – *i.e.*, whether his 2119(f) Statement raises a substantial question. The existence of a substantial question is found on a case-by-case basis. ***See Commonwealth v. Coulverson***, 34 A.3d 135 (Pa. Super. 2011). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing

process." ***Commonwealth v. Glass***, 50 A.3d 720, 727 (Pa. Super. 2012) (citations and internal quotation marks omitted).

Rogers claims a substantial question exists, because "the sentence is unreasonable and excessive." Rogers' Brief at 21. We have held, if a petition for allowance of appeal asserts that "the trial court imposed a sentence that is grossly disproportionate to [the appellant's] crimes", there "are 'plausible' arguments that [the] sentence is 'contrary to the fundamental norms which underlie the sentencing process.'" ***Commonwealth v. Parlante***, 823 A.2d 927, 929 (Pa. Super. 2003) (quoting ***Commonwealth v. Mouzon***, 812 A.2d 617, 622 (Pa. 2002)). Moreover, the Commonwealth does not oppose Rogers' petition for allowance of appeal. ***See*** Commonwealth's Brief at 25.

Thus, we agree with Rogers; he presented a substantial question. We grant allowance of appeal on this issue and review the merits of his claim.

On the merits, however, using our deferential standard of review for this issue, we find no abuse of discretion.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal ***absent a manifest abuse of discretion***. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Rodda***, 723 A.2d 212, 214 (Pa. Super. 1999) (*en banc*) (quotations marks and citations omitted) (emphasis added).

Rogers contends that "the trial court made no reference to [his] rehabilitative needs or mitigating circumstances" at sentencing. Rogers' Brief at 57. Thus, he thinks the trial "court violated the precepts of the Sentencing Code by imposing a sentence that is higher than what is recommended by the sentencing guidelines [and] is contrary to the fundamental norms underlying the sentencing process, and that is manifestly unreasonable and excessive." *Id.*

The trial court sentenced Rogers to 55 to 178 years of incarceration, because he committed 46 violent crimes, against five separate women, including two teenagers, over the course of a year. As previously mentioned, that sentence equated to about 1 to 4 years *per* crime.

Simply because the trial court ran Rogers' sentences consecutively, rather than concurrently, does not make his aggregate sentence unreasonable or excessive. *See Commonwealth v. Marts*, 889 A.2d 608, 612 (Pa. Super. 2005) (holding that, when a convict "42 Pa.C.S.A. § 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed.")

Here, the trial court acted within the sentencing guidelines and – as the Commonwealth notes – could have imposed a mandatory minimum of nearly 90 years and stayed inside the guidelines. *See* Commonwealth's Brief at 27. Rogers "is not entitled to a volume discount for his crimes." *Commonwealth v. Swope*, 123 A.3d 333, 341 (Pa. Super. 2015). Thus, we do not find that

his sentence, when Rogers raped five woman over the course of a year, amounts to an abuse of discretion. This is especially so because, two of the women were minors. Rogers made the other women, who were total strangers, fear for their lives by randomly assaulting in public.

And, even if a member of this panel would have crafted a more lenient sentence had one of us been the sentencing judge, none of us was. What we consider to be a perfect sentence has no bearing on appeal. Therefore, Rogers' pleas for leniency, based upon his age, his childhood, and his life of "basically going through the system," are misplaced in this Court. Rogers' Brief at 55. We are in no position to substitute our view of aggravating and mitigating factors with those of the trial court, nor may we reweigh those mitigating factors that Rogers thinks the sentencing judge overlooked. **See Marts**, **supra**.

"When, as here, the trial court has the benefit of a pre-sentence report, we presume that the court was aware of relevant information regarding the defendant's character and weighed those considerations along with any mitigating factors." **Commonwealth v. Seagraves**, 103 A.3d 839, 842 (Pa. Super. 2014). Given our deferential standard of review when considering a challenge to the discretionary aspects of sentencing, it would be inappropriate for us to second guess the trial court's weighing of those factors.

Accordingly, Rogers does not persuade us that an abuse of discretion has occurred. We dismiss his final appellate issue as meritless.

Judgment of sentence affirmed.

- 15 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/10/19