J-S74006-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ALLEN NEAL :
:
Appellant : No. 1844 EDA 2019

Appeal from the PCRA Order Entered June 5, 2019
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0000225-2015

BEFORE: BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY BENDER, P.J.E.: **FILED JANUARY 31, 2020**

Appellant, Allen Neal, appeals from the order denying his petition filed

pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.

After careful review, we affirm.

The facts underlying Appellant's conviction, taken from our

memorandum opinion filed during his direct appeal, are as follows:

> [Appellant] and the victim, Karina Zelaya-Betancourt, had been
> best friends for approximately six or seven years prior to this
> incident, which occurred in the early morning hours on December
> 14, 2014. Following a night out, [Appellant], the victim, and
> several friends went to the victim's apartment to continue the
> party. As the party died down, most of the guests left until only
> [Appellant], the victim, and the victim's friend, Amanda Belen,
> remained. The victim went to sleep in her daughter's bedroom
> because Ms. Belen had already gone to sleep in her room.
> [Appellant], after checking in on the victim, went to sleep on the
> living room couch.

---

* Former Justice specially assigned to the Superior Court.

At approximately 8:00 a.m., the victim was awoken by a "pain anally and I saw [Appellant] over me and I just told him to get off of me." She testified that she had been sleeping on her stomach and that her pajama pants and underwear had been pulled down. [Appellant] was mostly clothed but the victim "saw him like tuck himself back in before he got off of me" and "walked to the living room." On cross-examination, the victim conceded that she did not actually see [Appellant]'s penis.

Following the assault, the victim felt wetness on her buttocks area. She went into the bathroom, wiped the area with baby wipes, and discovered that she was bleeding from her anus. Some of the bloody wipes were flushed down the toilet, but several others were thrown into the trashcan….

After wiping herself off, the victim went into her bedroom, where Amanda Belen had been sleeping until she was awoken after hearing the victim yell at [Appellant]. The victim then called another friend, who lived close by and had been present the night before, to escort [Appellant] out of the apartment. [Appellant] complied without incident.

Subsequently, the victim was taken to Pocono Medical Center and the police were called. At the hospital, the victim was examined by Rose Reyes, R.N., a Sexual Assault Nurse Examiner (SANE). During the examination, the victim provided a statement to Nurse Reyes and Detective Robert Miller of the Pocono Mountain Regional Police Department (PMRPD).

Nurse Reyes, who qualified as an expert SANE nurse, testified that, at the beginning of the examination, the victim was crying and recounted the facts summarized above. During the interview portion of the examination, the victim completed a questionnaire, which asked various questions, including one central to this appeal: whether the victim had consensual sex in the previous five days. On the questionnaire, the victim responded that she had not….

During her physical examination of the victim, Nurse Reyes discovered "tearing in the anal area. It was mostly toward the 5 and 8 o'clock area. There was tiny little skin tears with a little tiny bit of bleeding more so to the 5:00 and 6:00 area." Nurse Reyes opined that these tears were consistent with trauma. Nurse Reyes took swabs of the victim's mouth, anus, and vagina, which were provided to the police.

- 2 -

***Commonwealth v. Neal***, No. 2462 EDA 2016, unpublished memorandum at 1-3 (Pa. Super. filed Sept. 11, 2017) (footnote omitted) (quoting from the trial court's Pa.R.A.P. 1925(a) Opinion, 10/5/16, at 2-4). Additionally,

> [the victim] testified and was cross-examined about the statement she gave at the hospital; she confirmed that she had checked a box to indicate that she had not had consensual sex in the five days preceding the incident. The Commonwealth's DNA expert later testified that the DNA of three individuals—Appellant, [the victim], and an unidentified person—was present on the wipes. Further, analysis of [the victim]'s rectal swab did not reveal Appellant's DNA but did reveal male DNA that was not Appellant's.

***Id.*** at 4 (citations omitted).

Based on these facts, the Commonwealth charged Appellant with numerous sexual offenses. Following a trial, which concluded on April 20, 2016, a jury convicted Appellant of two counts of indecent assault and acquitted him of all the remaining charges. On July 11, 2016, the trial court sentenced Appellant to 1-5 years' incarceration, and to lifetime registration requirements pursuant to the Sex Offender Registration and Notification Act, 42 Pa.C.S. §§ 9799.10–9799.41 ("SORNA"). Appellant filed a timely notice of appeal on August 4, 2016.

On direct appeal, this Court vacated "the lifetime registration portion of Appellant's sentence and remand[ed] for imposition of a twenty-five year registration requirement under SORNA[,]" but otherwise affirmed Appellant's judgment of sentence. ***Id.*** at 12. Our Supreme Court denied Appellant's petition for allowance of appeal. ***Commonwealth v. Neal***, 182 A.3d 447 (Pa. 2018).

Appellant subsequently filed a *pro se* PCRA petition on July 26, 2018, and an amended petition was filed on his behalf on September 25, 2018, after the appointment of counsel. The PCRA court conducted an evidentiary hearing on November 5, 2018. On June 6, 2019, the court issued an opinion and order ("PCO") denying Appellant's PCRA petition.

Appellant filed a timely notice of appeal, and a timely, court-ordered Rule 1925(b) statement. The PCRA court issued its Rule 1925(a) opinion on July 15, 2019, which relied entirely on the PCO. Appellant now presents the following, inter-related questions for our review:

> Was trial counsel ineffective for choosing to pursue the theory that the alleged victim lied, while failing to pursue the theory that the victim had a motive to fabricate the allegations, when there was strong evidence that the victim had a motive to fabricate?
>
> Was [trial] counsel ineffective for failing to file a pre-trial motion under the Rape Shield Law with a specific proffer of how it related to [A]ppellant's defense?

Appellant's Brief at 4.

After careful consideration of the record, the parties' briefs, and the well-reasoned opinion by the Honorable Jonathan Mark of the Court of Commonwealth Pleas of Monroe County, we affirm on the basis set forth in Judge Mark's opinion. *See* PCO at 12-13 (concluding that the at-issue evidence was not admissible, even if trial counsel had not procedurally defaulted by failing to file a pre-trial motion under the Rape Shield Law; thus, trial counsel was not ineffective).

Order *affirmed*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/31/20

## COURT OF COMMON PLEAS OF MONROE COUNTY
### FORTY-THIRD JUDICIAL DISTRICT
### COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA    :    **NO. 225 CRIMINAL 2015**

    v.                          :

**ALLEN NEAL,**                 :

                               :    **PCRA**

   **DEFENDANT**           :

### OPINION

This case is before the Court on the petition of defendant Allen Neal ("Defendant") for relief under the Post-Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. Section 9541 *et. seq.*, alleging that he received ineffective assistance of counsel. For the reasons that follow, we will deny the petition.

### BACKGROUND

The pre-PCRA history of this case is recited in the Rule 1025(a) opinion ("Appeal Opinion") we issued on October 4, 2016 in response to Defendant's direct appeal and the opinion of the Superior Court ("Superior Court Opinion"), filed on September 11, 2017 at 2462 EDA 2016, that affirmed Defendant's jail sentence but remanded for an adjustment to his Megan's Law classification based on intervening changes in the law. We incorporate both opinions (collectively the "Prior Opinions") into this opinion by reference. In summary:

Defendant was arrested and charged with Rape, Involuntary Deviate Sexual Intercourse, Sexual Assault, two counts of Aggravated Indecent Assault, and two counts of Indecent Assault. On April 20, 2016, after a three-day trial, a jury convicted

Defendant of Indecent Assault of an unconscious person and Indecent Assault without consent. Defendant was acquitted of the other charges.

On July 11, 2016, Defendant was sentenced to 12 to 60 months' incarceration and, under the law applicable at the time, was classified as a Tier III sexual offender.

On August 4, 2016, Defendant filed a direct appeal, alleging that we erred by: 1) "denying him the ability" to recall the victim on his side of the case; and 2) classifying him as a Tier III sexual offender under the Sexual Offender Registration and Notification Act (SORNA), 42 Pa. C.S.A. §9799.10 *et. seq.* The Superior Court concluded that his first assignment of error merited no relief. With respect to the second, based on the referenced change in the law, the Superior Court vacated the Megan's Law classification and remanded for reclassification and imposition of a twenty-five year registration requirement under SORNA. *Id.* at 12. Defendant then filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court. The petition was denied on March 13, 2018.

On July 26, 2018, Defendant filed a timely *pro se* PCRA petition. The Monroe County Public Defender's Office was appointed to represent Defendant. An amended petition was filed on September 25, 2018. A hearing was held on November 5, 2018. At the end of the hearing, the parties were directed to file briefs. Both briefs have been filed and the matter is ripe for disposition.

## DISCUSSION

### 1. The Applicable Law

PCRA petitions must meet statutory timeliness jurisdictional requirements. Specifically, unless a legislatively-recognized exception applies, a PCRA petition must

2

be filed within one year of the date the defendant's judgment of sentence became final. 42 Pa.C.S.A. § 9545(b)(1). *See Commonwealth v. Turner*, 73 A.3d 1283, 1285 (Pa. Super. 2013).

In addition to timeliness requirements, a petitioner must meet the eligibility requirements of the PCRA. 42 Pa. C.S.A.§ 9543. Under Section 9545, PCRA relief is not available for alleged errors that have been "previously litigated" or waived. 42 Pa.C.S.A. § 9543(a)(3); *Commonwealth v. Fowler*, 930 A.2d 586 (Pa. Super. 2007) Accordingly, "[t]o be entitled to PCRA relief, a petitioner must plead and prove, *inter alia*, that the allegation of error has not been previously litigated or waived." *Commonwealth v. Berry*, 877 A.2d 479, 482 (Pa. Super. 2005) (*en banc*), *appeal denied*, 917 A.2d 844 (Pa. 2007). An issue has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S.A. § 9544(a)(2); *Commonwealth v. Keaton*, 45 A.3d 1050, 1060 (Pa. 2012). An issue is waived if it could have been raised prior to the filing of the PCRA petition, but was not. *Commonwealth v. Williams*, 900 A.2d 906 (Pa. Super. 2006) (*en banc*); *Commonwealth v. Berry, supra*.

In more expanded terms, the previously litigated provision of Section 9543(a)

> prevents the relitigation of the same legal ground under alternative theories or allegations. *Commonwealth v. Collins*, 585 Pa. 45, 56, 888 A.2d 564, 570 (2005); *Commonwealth v. Derk*, 913 A.2d 875, 882 (Pa.Super.2006). Additionally, an issue is not cognizable under the PCRA where the petitioner simply attempts to relitigate, without couching in terms of ineffective assistance, a claim that has already been deemed reviewed on direct appeal. *See Commonwealth v. Jones*, 590 Pa. 202, 217, n. 10, 912 A.2d 268, 277, n. 10 (2006). If the claims upon which a petitioner seeks relief were previously litigated, then our inquiry ends and the petitioner is not entitled to relief. 42 Pa.C.S.A. § 9543(a)(3). An issue

3

is considered waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding. 42 Pa.C.S.A. § 9544(b); *Commonwealth v. Williams,* 900 A.2d 906, 908–09 (Pa.Super.2006) (*en banc*).

*Fowler,* 930 A.2d at 594. *See also Commonwealth v. Ligons,* 971 A.2d 1125 (Pa. 2009).

Substantively, Defendant's ineffective assistance of counsel claim implicates *Strickland v. Washington,* 466 U.S. 668 (1984), as adopted in Pennsylvania by *Commonwealth v. Pierce,* 527 A.2d 973 (Pa. 1987), which requires a defendant alleging ineffectiveness to demonstrate that he was prejudiced by an act or omission of his attorney. In cases where the *Strickland/Pierce* test applies, the analysis begins with

> the presumption that counsel rendered effective assistance. *Commonwealth v. Basemore,* 560 Pa. 258, 277 n. 10, 744 A.2d 717, 728 n. 10 (2000). To obtain relief on a claim of ineffective assistance of counsel, a Defendant must rebut that presumption and demonstrate that counsel's performance was deficient, and that such performance prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 687–91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In our Commonwealth, we have rearticulated the *Strickland* Court's performance and prejudice inquiry as a three-prong test. Specifically, a Defendant must show: (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or inaction; and (3) counsel's error caused prejudice such that there is a reasonable probability that the result of the proceeding would have been different absent such error. *Commonwealth v. Pierce,* 515 Pa. 153, 158–59, 527 A.2d 973, 975 (1987).

*Commonwealth v. Dennis,* 17 A.3d 297, 301 (Pa. 2011). *See Commonwealth v. Tedford,* 960 A.2d 1 (Pa. 2008); *Commonwealth v. Dennis,* 950 A.2d 945, 953 (Pa. 2008); *Commonwealth v. Gwynn,* 943 A.2d 940, 945 (Pa. 2008); *Commonwealth v. Mallory,* 941 A.2d 686 (Pa. 2008), *cert. denied,* 555 U.S. 884 (2008). "Counsel is

4

presumed to have been effective and the defendant has the burden of proving otherwise." *Commonwealth v. Miller*, 819 A.2d 504, 517 (Pa. 2002).

A corollary to the first element, counsel cannot be found ineffective for failing to pursue a baseless or meritless claim. *Commonwealth v. Roney*, 79 A.3d 595, 604 (Pa. 2013); *Commonwealth v. Washington*, 927 A.2d 586, 603 (Pa. 2007); Commonwealth v. *Harvey*, 812 A.2d 1190, 1199 (Pa. 2002). With regard to the second, the

> reasonable basis element, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." [*Commonwealth v.*] *Hanible*, [30 A.3d 426,] 439 [(Pa. 2011)] (citation omitted). We will conclude that counsel's strategy lacked a reasonable basis only if the Defendant proves that a foregone alternative "offered a potential for success substantially greater than the course actually pursued." [Commonwealth v.] *Spotz*, [18 A.3d 244] 260 [Pa. 2011] (citation omitted). To establish the third, the prejudice element, the Defendant must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. *Id.*

*Roney*, 79 A.3d at 604.

Since a Defendant must prove all three prongs of the *Strickland/Pierce* test, if he fails to prove any one of the prongs, the ineffectiveness claim may be dismissed on that basis alone without the need to determine whether the other two prongs have been met. *Commonwealth v. Basemore*, 744 A.2d 717 (Pa. 2000). Similarly, because claims of ineffective assistance of counsel are not self-proving, a Defendant cannot prevail unless he properly develops the claim. Thus, when a Defendant fails to properly plead all three prongs, or, having done so, to develop the claim, the Defendant is not entitled to relief and the court may find the claim waived for lack of development. *See Commonwealth v. Steele*, 961 A.2d 786 (Pa. 2008).

5

Additionally, trial counsel has broad discretion to determine the course of defense tactics and strategy. *See Commonwealth v. Fowler*, 670 A.2d 153 (Pa. Super. 1996); *Commonwealth v. Mizell*, 425 A.2d 424 (Pa. 1981). Where matters of strategy and tactics

> are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests. A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, the Defendant must show that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different.

*Commonwealth v. Colavita*, 993 A.2d 874, 887 (Pa. 2010)(citations omitted). Further, "[t]he length of time dedicated to client consultation affords no basis for inferring the extent of trial preparation." *Commonwealth v. Howard*, 732 A.2d 1213, 1215 (Pa. Super. 1999) (*citing Commonwealth v. Ellis*, 700 A.2d 948, 960 (Pa. Super. 1997)). Where a Defendant has not provided any evidence to support his allegation of inadequate preparation and it is shown that counsel met with the Defendant prior to trial, trial counsel cannot be deemed to be ineffective for lack of preparation without sufficient proof. *Id*. Thus, a Defendant is not entitled to relief simply because he or she did not like the strategy or because the strategy was unsuccessful. *Commonwealth v. Davis*, 554 A.2d 104, 111 (Pa. Super. 1989).

2.    Defendant's Ineffective Assistance of Counsel Claim Lacks Merit

Defendant argues that trial counsel was ineffective for failing to file a motion under the Rape Shield Law, 18 Pa.C.S.A. § 3104, "so that the Court would have an opportunity to balance defendant's interests in presenting a defense with the victim's

6

right to privacy regarding prior sexual relations." (Defendant's Letter Brief, filed December 28, 2018, p. 3 (unnumbered)). According to Defendant, "If the Motion had been filed, it is likely that the evidence would have been admitted as it is relevant and more probative than prejudicial" (*Id.* at 8) and, further, "if the jury had heard the entirety of Mr. Neal's defense, they might have acquitted him of all charges." (*Id.* at 7). In more expanded terms, Defendant argued at trial and reiterates in this collateral proceeding that the jury should have been permitted to hear that he had seen the victim having sex with another person the night before the incident that led to his conviction. Defendant's theory was and remains that his victim had a jealous boyfriend and, therefore, she had a motive to fabricate. In addition, Defendant believed and continues to believe that the evidence was admissible to impeach the victim. Under all theories advanced by Defendant, his ineffectiveness claim lacks merit.

Initially, Defendant's ineffectiveness claim is nothing more than a repackaging of the issues he presented to this Court during trial and later litigated in his direct appeal. At trial, Defendant sought to introduce evidence regarding and to question the victim about her alleged sexual encounter with a man the night before the incident. We ruled that Defendant would not be permitted to do so, articulating several reasons why. (N.T., 4/19/2016, pp.155 – 171. *See* N.T., 4/18/2016, pp. 237 - 240). Later, in the Appeal Opinion we issued in response to Defendant's appeal, we highlighted and amplified the reasoning expressed on the record and provided the law on which our ruling was based (Opinion, filed October 5, 2016). Of significance, we stated:

The Rape Shield Law provides, in pertinent part:

> (a) General rule. -- Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of

7

the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

(b) Evidentiary proceedings. -- A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

18 Pa.C.S.A. § 3104.

The bar to evidence of a victim's past sexual conduct is not absolute and is subject to certain statutory and constitutional exceptions. The lone statutory exception, included in the language of Section 3104(a), allows evidence of the victim's past sexual conduct *with the defendant* when *consent of the victim* is at issue. That exception is clearly not applicable to this case. *See Commonwealth v. Allburn*, 721 A.2d 363, 367 (Pa. Super. 1998).

With respect to the constitutional exceptions, our Supreme Court has held the law does not prohibit relevant evidence that "directly negates the act of intercourse with which a defendant is charged." *Commonwealth v. Majorana*, 470 A.2d 80, 84 (Pa. 1983). *See also Commonwealth v. Widmer*, 667 A.2d 215, 216 (Pa. Super. 1995). The Rape Shield Law may not be used to exclude relevant evidence showing a witness' bias or attacking credibility. *Commonwealth v. Black*, 487 A.2d 396, 401 (Pa. Super. 1985). "Evidence tending to directly exculpate the accused by showing that the alleged victim is biased and thus has a

8

motive to lie, fabricate, or seek retribution is admissible at trial." *Commonwealth v. Guy*, 686 A.2d 397, 400 (Pa. Super. 1996). If the offer of proof only shows that others in addition to the defendant had sexual contact with the victim, but does not show how the evidence would exonerate the defendant, evidence of prior sexual activity is inadmissible under the Rape Shield Law. *Commonwealth v. Fink*, 791 A.2d 1235, (Pa. Super. 2002); *Commonwealth v. Durst*, 559 A.2d 504 (Pa. 1989).

In sexual assault cases, trial courts are frequently called upon to interpret and apply the Rape Shield Law. Rulings on the admissibility of evidence of the sexual history of a sexual assault complainant will be reversed only where there has been a clear abuse of discretion. *Commonwealth v. Allbum*, 721 A.2d 363, 366 (Pa. Super. 1998). An abuse of discretion is not merely an error of judgment. *Id.* An abuse of discretion occurs where the record shows that the trial court, in reaching a conclusion, overrides or misapplies the law, or exercises its judgment in a manifestly unreasonable manner or as the result of partiality, prejudice, bias, or ill will. *Id.*

In this case, we orally summarized our reasons for issuing the challenged ruling on the record. (N.T. 4/19/2016, pp.159-60 and 160-71). We incorporate our on-record statements into this opinion by reference. For the most part, the rationale we previously articulated suffices to address Defendant's first assignment of error and to demonstrate that our ruling was not an abuse of discretion. To what we said before, we add the law cited above and the following:

First, Defendant's assignment of error is inaccurate and misleading. We did not, as the assignment implies, preclude Defendant from recalling the victim. On the contrary, our ruling was quite clear that Defendant would be permitted to recall the victim, but that the subject matter about which he would be permitted to inquire would be limited in accordance with the Rape Shield Law. (N.T. 4/19/2016, pp.159-60).

Second, Defendant's attempt to delve into areas limited or precluded by the Rape Shield Law was procedurally defective. Under Section 3104(b), Defendant was required to file a *written* motion in addition to the offer of proof. When Defendant made his oral motion at trial, we indicated that this procedural prerequisite had not been met. (N.T. 4/19/2016, pp. 159-60). By itself, this failure is fatal to

9

Defendant's claim. See *Commonwealth v. Beltz*, 829 A.2d 680, 684 (Pa. Super. 2003). This is especially true in this case since Defendant and his attorney became aware of the information needed to file the required motion – presence of the DNA of an unknown male on the rectal swab, the victim's answer on the SANE questionnaire regarding consensual sexual activity, and Defendant's assertion that the victim had sexual contact with a man the night before – through documents provided in discovery, expert reports, and Defendant's personal observations and knowledge long before trial. Simply, Defendant had ample opportunity to file a timely written motion. He did not.

Third, the evidence Defendant sought to introduce to address credibility *was* heard by the jury, albeit without reference to the alleged sexual encounter with a man the night before, through the testimony of the victim and the reports and testimony of the experts. Specifically, the jury heard the victim's denial of sexual activity within the previous five days and about the presence of an unknown male's DNA on the rectal swab. Our ruling did not preclude Defendant from eliciting or arguing this evidence or using it to attack the victim's credibility. In fact, in his closing, counsel for Defendant highlighted and argued this evidence. (N.T., 4/20/2016, pp. 16-17).

Fourth, Defendant's sole reason for recalling the victim was his belief that her general credibility had been called into question based on the response she provided on the questionnaire. According to Defendant, this "credibility issue" constitutes an exception to the Rape Shield Law. However, numerous cases have held that such evidence, asserting that others in addition to Defendant had sexual contact with victim, is inadmissible and not relevant. *See Durst,* 559 A.2d at 506 ("Inasmuch as Appellee's offer of proof tends only to show that others *in addition* to Appellee had sexual contact with the victim rather than showing how this testimony would exonerate him, Appellee has not satisfied his burden of showing that the absent testimony would have been helpful in establishing his innocence."). *See also Commonwealth v. Reefer,* 573 A.2d 1153, 1154 (Pa. Super. 1990) (holding that such evidence is properly excluded on grounds of relevancy).

Finally, along similar lines, as we noted on the record, Defendant's offer of proof did not allege or contain any indication that the victim had motive to lie or bias that was

10

specific to Defendant. Without a more specific proffer, defendant's general credibility argument is simply not enough to trump the Rape Shield Law. In this regard, a quick reading of *Black* could lead to the belief that a victim's past sexual conduct may be admissible if it brings credibility into question. However, subsequent appellate cases clarify and teach that a general credibility attack is simply not enough to trump the Rape Shield Law. In this regard, the Superior Court has clarified that inquiries attacking the victim's credibility are sufficient to pierce the Rape Shield Law "only where the victim's credibility was allegedly affected by bias against or hostility toward the defendant, or the victim had a motive to seek retribution." *Commonwealth v. Boyles*, 595 A.2d 1180 (Pa. Super. 1991); Compare *Commonwealth v. Frank*, 577 A.2d 609, 620 (Pa. Super. 1990) and *Commonwealth v. Erie*, 521 A.2d 464, 467–69 (Pa. Super. 1987), *allocatur denied*, 538 A.2d 875 (1988) (following *Black*) with *Commonwealth v. Reefer*, 573 A.2d 1153, 1154 (Pa. Super. 1990) and *Commonwealth v. Nenninger*, 519 A.2d 433, 437 (Pa. Super. 1986) and *Commonwealth v. Dear*, 492 A.2d 714, 719–20 (Pa. Super. 1985) and *Commonwealth v. Coia*, 492 A.2d 1159, 1161 (Pa. Super. 1985) (distinguishing *Black*).

In *Reefer*, for example, the appellant sought to introduce witness testimony regarding the prior sexual conduct of the victim (and of her mother) for impeachment purposes. In addition to finding the proffered testimony irrelevant, the court noted the appellant's failure to "connect the alleged sexual activity involving the excluded defense witnesses with a motive for hostility by the victim, or his mother, against him." *Reefer* supra at 1154. The court went on to contrast *Reefer* with *Black*, a case in which the excluded evidence "concerned the defendant's ability to cross-examine the prosecutrix/victim about her incestuous relationship with her brother, who had been driven from the home for that reason by the defendant." *Id.* In *Black*, this evidence was admissible but it is clear that the proffer in that case laid a foundation for bias and motive. Here, Defendant's offer of proof did not allege or contain any indication that the victim had a specific motive to lie or bias towards Defendant. Without a more specific proffer, Defendant's general credibility argument was simply insufficient to trump the Rape Shield Law.

*Id.* at 10-15.

On appeal, the Superior Court affirmed, stating:

> The trial court's opinion comprehensively discusses and properly disposes of this issue. *See* Trial Ct. Op. at 12-15 (explaining (1) Appellant failed to comply with the procedural requirements of the Rape Shield Law; (2) "the evidence [Appellant] sought to introduce to address the credibility *was* heard by the jury, albeit without reference to the alleged sexual encounter with a man the night before, through testimony of the victim and the reports and testimony of the experts"; and (3) Appellant's general credibility argument was insufficient to trump the Rape Shield Law). With respect to Appellant's claim that he was denied his constitutional right to confront Ms. Zelaya-Betancourt through cross-examination, we note that the trial court did not preclude Appellant from recalling Ms. Zelaya-Betancourt as a witness. Rather, the court merely applied the Rape Shield Law's restrictions on the admissibility of evidence of past sexual conduct in limiting the questions that Appellant could ask if he questioned Ms. Zelaya-Betancourt; Appelland was free to confront Ms. Zelaya-Betancourt through other areas of questioning, but elected not to do so once the trial court made clear that his questioning had to conform to the Rape Shield Law's requirements. Enforcement of rules regarding the admissibility of evidence is not a violation of the constitutional right to confront witnesses. *See* Commonwealth v. Quartman, 458 A.2d 994, 996 (Pa. Super. 1983) ("The fundamental right to confront witnesses often gives way . . . to certain evidentiary principles."). Appellant therefore is not entitled to relief on this issue.

Superior Court Opinion, pp. 10-11.

For the reasons expressed on the record during trial as well as those recited in the Prior Opinions, Defendant's assertion that the evidence he sought to present was admissible was and remains meritless. Since counsel cannot be deemed ineffective for failing to pursue a baseless or meritless claim, it follows that trial counsel cannot be deemed ineffective.

We recognize that, as Defendant points out, one of the bases for our ruling was trial counsel's failure to timely and properly file a motion under the Rape Shield law.

12

However, as both the Prior Opinions and our on-record reasoning demonstrate, the procedural snafu was only one of several reasons for our ruling. For the reasons stated in those opinions, even if a motion had been timely and properly filed, the evidence Defendant sought to present would have been inadmissible.

As also discussed in the Prior Opinions, while trial counsel did not file a Rape Shield Law motion he did attempt to introduce the challenged evidence and question the victim about the alleged sexual encounter of the night before. Further, we did not preclude Defendant from recalling the victim; rather, we limited the subject matter about which inquiries could be made in accordance with the Rape Shield Law. Moreover,

> the evidence Defendant sought to introduce to address credibility *was* heard by the jury, albeit without reference to the alleged sexual encounter with a man the night before, through the testimony of the victim and the reports and testimony of the experts. Specifically, the jury heard the victim's denial of sexual activity within the previous five days and about the presence of an unknown male's DNA on the rectal swab. Our ruling did not preclude Defendant from eliciting or arguing this evidence or using it to attack the victim's credibility. In fact, in his closing, counsel for Defendant highlighted and argued this evidence. (N.T., 4/20/2016, pp. 16-17).

Appeal Opinion, p.13. As this passage shows, Defendant's assertion that the jury did not hear evidence of the type he sought to introduce due to trial counsel's ineffectiveness is simply wrong.

Additionally, even if there is some twist on the evidence that Defendant could with a straight face argue the jury did not hear, an assertion that "if the jury had heard the entirety of Mr. Neal's defense, they *might* have acquitted him of all charges"

13

(Defendant's Letter Brief, p. 7 (unnumbered)(emphasis added), does not satisfy the "but for" test and does not state a valid claim of attorney ineffectiveness.

Finally, while the PCRA petition appears to be predicated entirely on a claim of attorney ineffectiveness, portions of Defendant's brief may also be read as attempting to substantively challenge our evidentiary ruling on constitutional grounds.[1] To the extent Defendant is or may be deemed to be asserting a substantive argument outside the context of an ineffectiveness claim, he is under the law discussed above ineligible for relief under the PCRA because his claim was previously litigated and rejected in his direct appeal. Similarly, to the extent any vestige of a different non-ineffectiveness claim that was not previously litigated can be gleaned, the claim has been waived because Defendant could easily have litigated such an issue in his direct appeal but did not.

For these reasons, we enter the following

---

[1] For example, Defendant's brief lists two inter-related issues. In the second issue, Defendant squarely raises an ineffective assistance claim. However, in the first he asks, "Was the jury prevented from hearing evidence regarding the alleged victim's motive to fabricate allegations due to defense counsel's failure to raise it as a pre-trial issue?" (Defendant's Letter brief, p. 3).

14

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | NO. 225 CRIMINAL 2015 |
| | : | |
| v. | : | |
| | : | |
| ALLEN NEAL, | : | |
| | : | PCRA |
| DEFENDANT | : | |

## ORDER

**AND NOW**, this 5th day of June, 2019, it is **ORDERED** that Defendant's petition for relief under the Post-Conviction Relief Act, 42 Pa. C.S.A. Section 9541 *et. seq.*, is **DENIED**.

Defendant is advised that he has thirty (30) days from the date this Order is entered on the docket and served on the parties within which to file an appeal to the Pennsylvania Superior Court.

BY THE COURT:

_____
JONATHAN MARK, J.

Cc:    District Attorney (MTR)
       Public Defender (CB)

Clerk of Courts
JUN 6 '19 AM 8:44

15