492 A.2d 714

**COMMONWEALTH of Pennsylvania**

v.

**Phinas DEAR, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 2, 1983.

Filed May 3, 1985.

Paul Lichtenstein, Harrisburg, for appellant.

Katherene Holtzinger, Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

Before WICKERSHAM, WIEAND and CERCONE, JJ.

WICKERSHAM, Judge:

On July 28, 1981, appellant Phinas Dear, Jr. was arrested and charged with the rape and robbery of Edith Raup. The prosecutrix alleges that on the evening of July 1, 1981, she went to the Verbeke Bar on the corner of Third and Verbeke Streets, Harrisburg, Pennsylvania, with the intention of celebrating her 21st birthday which was to occur the following day. She further testified that appellant came into the bar at approximately 6:00 p.m. that evening and approached her and asked her to have sex with him. Successfully rebuking appellant, the prosecutrix no longer was aware of his presence in the bar.

The prosecutrix further testified that after having several drinks she left the bar around 10:00 p.m. to get some fresh air. As she walked back to the bar, she saw appellant with a handgun. Appellant approached the prosecutrix, called her derogatory names, grabbed her with one hand, and slapped her with the other. She testified that appellant forced her into an alley behind the bar where he robbed her of $100. Appellant then forced the prosecutrix further down the alley where he forcibly raped her, discharged the gun beside her head and subsequently inserted the barrel of the handgun in her vagina. After this incident, the prosecutrix walked with appellant back towards the bar where she saw a friend's car and ran toward it to escape.

Ms. Raup then proceeded to call the police and upon their arrival, gave her statement. She was taken to Harrisburg Polyclinic Hospital and examined by Dr. John O'Shea, who collected evidence by using a sex crimes kit. He said that the patient bordered on being hysterical at that point. An external examination revealed that Edith Raup had bruises on her forearms, face and back and bruising on both breasts that would be consistent with finger marks. Dr. O'Shea's internal examination revealed a tear at the entrance to the vagina, which improbably could have been caused by normal vaginal intercourse, but was more consistent with the type of injury which would result from a blunt instrument being forced into her vagina.

Edith Raup detailed a further incident the next evening with appellant. She testified that appellant abducted her at gunpoint from in front of the Verbeke Bar and drove her to a rural area where he threatened to kill her if she went to the police. Ms. Raup was then returned to the area of the Verbeke Bar and as appellant drove away, she noted the car's license number and reported the number and alleged incident to the police. The auto was traced to appellant's spouse and Edith Raup identified appellant from photos prior to his arrest on July 28, 1981.

At the time of his arrest, appellant denied knowing Edith Raup or being in the area of the Verbeke Bar on July 1, 1981. During an interview on August 10, 1981, appellant denied raping Edith Raup or having sexual intercourse with her. A court order was obtained for the extraction of a pubic hair from appellant for comparison with a foreign pubic hair found in the combing of Edith Raup. A chemist with the Pennsylvania State Police Crime Laboratory, James L. Miller, testified that these hair samples were found to be virtually identical when examined under a high-powered microscope.

Appellant testified at trial that he was solicited by Edith Raup and he knew her to be a prostitute. He stated that they left the bar on July 1, 1981 to go to a motel, but decided to have sex in an overgrown vacant lot.

Appellant was found guilty of both rape and robbery. Post-trial motions were filed and denied and on April 8, 1982 appellant was sentenced to not less than five nor more than ten years imprisonment on the rape conviction and not less than two nor more than five years imprisonment on the robbery conviction. A timely appeal was taken.

In this appeal, the following issues are raised:

I. Does exclusion of relevant evidence of prior sexual history of the prosecutrix in a rape case pursuant to the Pa. Rape Shield Law deny the defendant of his constitutional rights under the Sixth Amendment to adequately confront witnesses against him?

II.  Are the statements of the prosecutrix to the examining physician discoverable by pretrial motions?

III.  Does the use of [peremptory] challenges to remove minority jurors deny the defendant a jury of his peers?

Brief for Appellant at 6.

Turning to the first issue raised on appeal, we note that at trial Paul Lichtenstein, Esquire, made the following offer into evidence of the victim's prior criminal record:

MR. LICHTENSTEIN:  I would like to offer into evidence the victim's prior criminal record which consists of three prior convictions of criminal solicitation in prostitution, all of which occurred in the same general vicinity of where she was allegedly raped....

MR. CRAYTON:  This is prohibited, Your Honor, under Title 18, Section 3104A, Pennsylvania Rape Shield Law, and it is evidence of prior sexual conduct with third persons and it is clearly prohibited under that section and we would ask that the motion be denied.

THE COURT:  We would deny the motion because the purpose of the act is to eliminate the victim becoming on trial in a rape case.  The very purpose of the act is to eliminate any reference to the victim's sexual activity with any party other than the Defendant and this has been a practice of longstanding in criminal proceedings to raise a question about the victim's sexual activities and divert the attention of the jury away from the question and that is whether the Defendant committed the act and whether it was forcibly committed.

We are not going to permit any records of any prior conviction of any prostitution for the reason that the Rape Shield Act is designed expressly to eliminate that problem, and we would grant you an exception on the record.

MR. LICHTENSTEIN:  Thank you, Your Honor.

Record at 92–93.

The Pennsylvania Rape Shield Law provides in pertinent part:

## § 3104. Evidence of victim's sexual conduct

**(a) General Rule.**—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

**(b) Evidentiary proceedings.**—A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

1972, Dec. 6, P.L. 1482, No. 334, § 1, effective June 6, 1973. As amended 1976, May 18, P.L. 120, No. 53, § 1, effective in 30 days.

18 Pa.C.S. § 3104.

In *Commonwealth v. Boone*, 319 Pa.Super. 358, 466 A.2d 198 (1983), appellant was charged with rape, involuntary deviate sexual intercourse and conspiracy. The facts of the case indicated that on October 2, 1980, the victim, aged 14, was waiting for a bus to transport her to school when she encountered her former boyfriend, Maurice Bussey, who invited her to the home of Parnell Canaday, also a former boyfriend.

> Bussey and the victim watched television until the arrival of Canaday, who, along with Bussey, convinced the victim to engage in a game of strip poker with them. Upon losing several hands of poker and while nearly naked, she was told to either remove the blanket she was using to cover herself or go down into the basement with one of

the boys. The victim reluctantly agreed to go to the basement with Bussey. Bussey then asked the victim to engage in intercourse, which she refused.

A short time later, Canaday brought Appellant and three other males to the basement, who, along with Canaday, repeatedly raped and sodomized the victim, while those not immediately participating shouted their approval. Another man eventually arrived and anally raped the victim. After approximately four hours, the males permitted the victim to leave, but threatened her with further harm if she told any one about the assaults.

Approximately two weeks later, Bussey and Canaday, accompanied by several other people, went to the victim's home and threatened the victim, her mother and sister concerning the incident. The victim reported the incident to the police the following day.

Appellant, who was tried jointly with co-defendants Rodney Hope and Robert Henderson, was found guilty on April 28, 1981 and following denial of post-verdict motions, was sentenced. This appeal followed.

Appellant raises three issues on appeal, *viz.:* (1) did the trial court err in refusing to ask prospective jurors, during voir dire examination, five questions prepared and submitted by Appellant, (2) did the trial court err in refusing to allow Appellant to cross-examine the victim with respect to her prior sexual activity with two of the co-conspirators and (3) was the evidence sufficient to support the verdict.

Upon review of the record, briefs of the parties and the opinion of the Honorable Angelo A. Guarino, we find that the trial court has adequately disposed of issues one and three. We therefore adopt that portion of the trial court's opinion for purposes of allocatur.

The remaining issue concerns the trial court's refusal to permit counsel for Appellant to cross-examine the victim with respect to her prior sexual activity with Bussey and Canaday, who were adjudicated in a separate proceeding as juveniles.

. . . .

Initially, we note that *Appellant's* proffer of evidence concerning prior sexual conduct between the victim and Canaday and Bussey was barred by the statute. *See Commonwealth v. Majorana,* 299 Pa.Super. 211, 215–16 n. 7, 445 A.2d 529, 531 n. 7 (1982). Also, in *Commonwealth v. Duncan,* 279 Pa.Super. 395, 398, 421 A.2d 257, 259 (1980) this court held that evidence of past sexual conduct by the victim with third persons is not admissible for *any purpose.*

Such evidence has been determined to be of little relevance to the issue of consent between the victim and a defendant who has not personally engaged in prior sexual conduct with the victim. As stated in *Commonwealth v. Quartman,* 312 Pa.Super. 349, 353–54, 458 A.2d 994, 996–7 (1983):

> As with other evidentiary rules, the state's interest must be balanced against the fundamental right of the accused to a fair trial. Here, the state's interest in shielding the complainant from undue harassment in a rape prosecution must be balanced against appellant's right to confront his accuser by presenting evidence of the complainant's prior sexual conduct. Appellant's sole purpose in introducing evidence of the victim's alleged prior sexual relations with others was to create an inference for the jury connecting the victim's purported consent on earlier occasions with his [a prison male v. male rape] consent to relations with appellant. 'A rape victim's previous sexual conduct with other persons has very little probative value about [his] consent to intercourse with a particular person at a particular time.' *State v. Green* [163 W.Va. 681], 260 S.E.2d 257, 261 (1979). Evidence of a rape victim's prior relations with other persons is generally only slightly relevant to the issue of consent with the accused and absent extraordinary circumstances fails to shift the balance between the state's interest in shielding the rape victim and the defendant's right to confrontation

in favor of the defendant. (citations omitted) (brackets in original) [comment added].

It has also been held that the limited exclusion of the victim's past sexual conduct with parties other than the defendant to prove consent no more deprives a defendant of a fair trial than do the rules of evidence barring hearsay, opinion evidence and privileged communications. *People v. Blackburn,* 56 Cal.App.3d 685, 128 Cal.Rptr. 864 (1976).

We therefore hold that Appellant was barred by 18 Pa.C.S.A. § 3104 from introducing evidence of prior sexual conduct between the victim and Canaday and Bussey.

*Id.,* 319 Pa.Superior Ct. at 360–62, 363–65, 466 A.2d at 199–200, 201–02 (footnotes omitted).

■ We hold that *Boone* is controlling in the instant appeal. The offer of evidence at trial was to show that the victim's prior criminal record, consisting of three prior convictions of criminal solicitation and prostitution, indicated her consent to having sexual intercourse with appellant on the occasion at hand. As such, it represented intended evidence of prior sexual conduct with third persons, clearly prohibited under the legislative act and under our interpretation thereof in *Boone.*

Nor is our result changed by our recent *en banc* decision in *Commonwealth v. Black,* 337 Pa.Super. 548, 487 A.2d 396 (1985) in which appellant was charged with statutory rape and related crimes involving his thirteen year old daughter. The facts in the *Black* case were set forth in the following manner:

Appellant, 48-year-old Darrell L. Black, was charged with statutory rape, corruption of minors, incest, and attempted involuntary deviate sexual intercourse with respect to his thirteen-year-old daughter, Cynthia. After a jury trial, he was found guilty of all counts and sentenced to a term of imprisonment of two and one-half to five years. This appeal followed. Appellant challenges the lower court's application of Pennsylvania's Rape Shield Law, 18 Pa.C.S. § 3104, which prevented him from

introducing evidence of prosecutrix' prior sexual conduct with one of her brothers. We agree with appellant and remand for a new trial.

Black was accused of committing the present offenses during the 1979 Christmas holiday season. The trial testimony revealed that during this time appellant resided with his family, including prosecutrix, in a four- or five-bedroom, single family dwelling. On the night in question, the house was filled beyond capacity by out-of-town guests, bringing the total number of occupants to twelve or thirteen persons. The minor prosecutrix testified as follows. After everyone had retired for the evening, her father asked her to come into his bedroom to massage his legs, a treatment required by his diabetic condition and routinely performed by members of his family in his bedroom. She agreed to do this and after she finished, he motioned her to lie down on the bed with her back toward him. He then pulled her underwear down and had sexual intercourse with her. The victim maintained that the entire sexual episode occurred without a word being spoken.

. . . .

While the sexual incident was found to have occurred during Christmas, 1979, testimony indicated that Cynthia's complaints began to surface almost three months later, near the end of March, 1980. These complaints coincided with violent arguments between appellant and prosecutrix' fifteen-year-old brother, which culminated in the brother leaving home and separating from the family, including prosecutrix. Cynthia admitted wanting her brother back in the home, and other testimony indicated that as soon as appellant was arrested and removed, the fifteen-year-old brother contacted the family and sought to return home. In his defense, appellant offered to show through cross-examination that Cynthia had maintained an ongoing, consensual sexual relationship with this brother, which ended when the brother left home. Appellant contends that the true extent of prosecutrix' bias

against him could only be revealed by showing the abnormal, sexual relationship which she had with her brother and which had been terminated by appellant's dispute with her brother. Specifically, appellant urges that Cynthia's testimony can only be weighed fairly when measured against her desire, first, to punish appellant for his interference with her sexual relationship with her brother, and, second, to remove appellant from the home so that her brother might return and resume the relationship. As noted above, the lower court excluded this evidence of prosecutrix' prior sexual conduct with her brother, relying on the Rape Shield Law.

At 337 Pa.Super. 550–552, 487 A.2d 397–398 (footnotes omitted).

In *Black* we pointed out that the evidence of prior sexual conduct was offered to impeach the prosecutrix by revealing a specific bias against and hostility toward appellant and a motive to seek retribution by, perhaps, false accusation.[1]

1. Judge Cavanaugh said in *Commonwealth v. Black, supra:*

    While we hold that Pennsylvania's Rape Shield Law may not be used to exclude relevant evidence showing witness' bias or attacking credibility, we do not hold that all material evidence is necessarily admissible. Although logically relevant, evidence tending to show the victim's prejudice or lack of credibility may be excluded if 'it would so inflame the minds of the jurors that its probative value is outweighed by unfair prejudice.' *Commonwealth v. Stewart,* 304 Pa.Super. 382, 387, 450 A.2d 732, 734 (1982) (quoting *Commonwealth v. Strube,* 274 Pa.Super. 199, 216, 418 A.2d 365, 374 (1979) (citations omitted), *cert. denied* 449 U.S. 992 [101 S.Ct. 527, 66 L.Ed.2d 288] (1980)). *Cf. Fed.R.Evid.* 403 ('Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice....'). This balancing determination between probative value and unfair prejudice should be made by the trial court in an *in camera* hearing similar to that outlined in 18 Pa.C.S. § 3104(b). At this hearing, the trial court should determine the following as a matter of record to be preserved for appellate review: (1) whether the proposed evidence is relevant to show bias or motive or to attack credibility; (2) whether the probative value of the evidence outweighs its prejudicial effect; and (3) whether there are alternative means of proving bias or motive to challenge credibility.

    At 401 (emphasis in original) (footnote omitted).

■ Instantly, appellant wanted to put the victim's criminal record for prostitution into evidence in order to substantiate his own testimony that she was a prostitute and had agreed to have sex with him for money. In other words, appellant was attempting to prove her *consent*, not her *bias* toward him specifically. Therefore, *Black* is not controlling, because both *Black* and the statute itself (18 Pa.C.S. § 3104) hold that evidence of sexual conduct with third persons is irrelevant to prove either consent or general moral defect of the victim.[2]

■ There is no merit whatsoever in the remaining two contentions raised on this appeal both of which were adequately covered and discussed in the opinion by the Honorable Clarence C. Morrison dated March 25, 1982, which opinion we rely on in answer to the second and third issues.

Judgment of sentence affirmed.

---

**2.** We have already determined that the exclusion of this evidence does not constitute a denial of appellant's Sixth Amendment right to confrontation. *See Commonwealth v. Quartman*, 312 Pa.Super. 349, 458 A.2d 994 (1983) (Opinion by Hoffman, J.).