**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 8 EAP 2020 |
| | : | |
| Appellee | : | Appeal from the Judgment of Superior |
| | : | Court entered on 9/25/19 at No. 342 |
| | : | EDA 2017 affirming the judgment of |
| v. | : | sentence entered on 7/2/15 in the Court |
| | : | of Common Pleas, Philadelphia County, |
| | : | Criminal Division at Nos. CP-51-CR- |
| ERIC ROGERS, | : | 0000721-2013, CP-51-CR-0001717- |
| | : | 2013, CP-51-CR-0005681-2012, CP- |
| Appellant | : | 51-CR-0007377-2012, and CP-51-CR- |
| | : | 0007563-2012 |
| | : | |
| | : | |
| | : | ARGUED: October 21, 2020 |

*OPINION*

**JUSTICE SAYLOR** **DECIDED: May 18, 2021**

The primary issue raised in this discretionary appeal is whether the trial court properly excluded evidence that two of Appellant's rape victims had a history of prostitution convictions, where Appellant's defense included a contention that the encounters were consensual instances of prostitution.

**I.**

Section 3104 of Pennsylvania's Crimes Code, referred to as the Rape Shield Law (the "shield law"), is designed to protect alleged rape victims in the context of a criminal trial. Subject to limited exceptions, it excludes evidence of an alleged victim's past sexual history. Its purpose is to prevent the trial from shifting its focus from the

defendant's guilt or innocence to the victim's reputation or moral virtue. *See Commonwealth v. Johnson*, 536 Pa. 153, 158, 638 A.2d 940, 942 (1994) (citing *Commonwealth v. Majorana*, 503 Pa. 602, 470 A.2d 80 (1983)). The law provides:

> **(a) General rule.--**Evidence of specific instances of the alleged victim's past sexual conduct, past sexual victimization, allegations of past sexual victimization, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions of any offense listed in subsection (c) except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S. §3104(a). Under subsection (c), the above provision applies, *inter alia*, in cases where the defendant is charged under Chapter 31 of the Crimes Code, relating to sexual offenses. *See id.* §3104(c).[1]

In Philadelphia, over the course of approximately ten months beginning in May 2011, Appellant physically and sexually assaulted five women – two of whom were minors – and stole various items of personal property from them. Appellant was charged with dozens of crimes, including multiple counts of rape, robbery, and involuntary deviate sexual intercourse. The charges were consolidated for trial.

In a pretrial motion *in limine*, Appellant sought permission to introduce evidence that two of the three adult victims, A.P. and M.H., had a history of convictions for

---

[1] Subsection (a) also applies in the context of prosecutions under the following aspects of the Crimes Code: Chapter 27 (relating to assault), Chapter 29 (relating to kidnapping), Chapter 30 (relating to human trafficking), Section 4302 (relating to incest), Section 4304 (relating to endangering welfare of children, but only if the offense involved sexual contact with the victim), Section 6301(a)(1)(ii) (relating to corruption of minors), Section 6312(b) (relating to sexual abuse of children), Section 6318 (relating to unlawful contact with a minor), and Section 6320 (relating to sexual exploitation of children). *See id.* §3104(c).

Subsection (b) relates to the procedures for a defense proffer, an in-camera review where warranted, and the court's issuance of findings as of record. *See id.* §3104(b).

prostitution in the general area where the incidents occurred. He wanted to use such proofs to support the defense theory, as to those victims, that his encounters with them were consensual acts of prostitution. In his filing, labeled as a combined motion and memorandum of law, Appellant acknowledged the shield law, but maintained it did not exclude the evidence in question. He also claimed that exclusion would violate his rights under the United States and Pennsylvania Constitutions. The common pleas court, per Judge Anders, denied the motion in relevant part, noting that none of the convictions related to encounters with Appellant. *See* N.T., Feb. 9, 2015, at 5-6.[2]

The matter proceeded to a consolidated, four-day waiver trial before Judge Woelpper in February 2015. At trial, the victims testified and described the attacks, including the threats of violence and actual violence Appellant used to subdue his victims – including tackling, punching, and choking. Several of the victims indicated that, after Appellant assaulted them, he stole personal property from them, such as credit cards, identification cards, cell phones, and cash. With regard to the three adult victims, the Commonwealth presented evidence that DNA matching Appellant's was recovered from the victims' clothing or bodies shortly after each attack.

Appellant testified in his defense. He admitted to having sexual relations with all of the victims, but portrayed it as consensual in each instance. He denied that he physically harmed, or stole property from, any of them. Further, he described the

---

[2] In the same motion, Appellant also requested permission to introduce certain evidence concerning the third adult victim, C.B. That aspect of the motion is not presently at issue. As well, no sexual-history evidence concerning the two minor victims is in issue.

Separately, the record indicates that some of the evidence pertained to alleged instances of prostitution that occurred after the offenses committed by Appellant. *See* N.T., Feb. 10, 2015 (Motion), at 6, 10; *Commonwealth v. Rogers*, Nos. CP-51-CR-5861-2012, *et al.*, Post-Sentence Motion dated July 13, 2015 (C.P. Phila.) ("Appellant's Post-Sentence Motion"), at ¶6(c). This facet of the dispute is discussed below.

encounters with the adult victims as sex-for-money transactions. He claimed to have propositioned A.P. and that she agreed she wanted to "make some money." N.T., Feb. 11, 2015, at 103. As for M.H., Appellant testified that she was walking back and forth in a manner suggestive of solicitation. *See id.* at 104.

The court, sitting as fact-finder, convicted Appellant of rape, aggravated assault, robbery, and related offenses as to all three of the adult victims. The court also found him guilty of rape and other offenses as to one of the minor victims, and corruption of minors with regard to the other minor victim. *See* N.T., Feb. 19, 2015, at 3-4. Appellant was classified as a sexually-violent predator and sentenced to an aggregate prison term of 55-170 years. *See* N.T., July 2, 2015, at 50. Appellant's post-sentence motion was denied.[3]

In early 2017, after his direct appeal rights were reinstated *nunc pro tunc*, Appellant lodged his appeal and filed a Rule 1925(b) concise statement. *See* Pa.R.A.P. 1925(b). The common pleas court issued two opinions, one by Judge Woelpper summarizing the trial evidence and addressing claims relating to evidentiary weight and sentencing discretion, *see Commonwealth v. Rogers*, Nos. CP-51-CR-5861-2012, *et al.*, *slip op.* (C.P. Phila. May 1, 2018), and the other by Judge Anders concerning the denial of Appellant's pretrial motion *in limine*. *See Commonwealth v. Rogers*, Nos. CP-51-CR-5861-2012, *et al.*, *slip op.* (C.P. Phila. May 7, 2018).

In the latter opinion, the court relied on the Rape Shield Law as the basis for its determination that the proffered evidence was properly excluded. The court explained that, while exculpatory proofs are not barred by the statute, that precept was inapplicable in the present case:

---

[3] In his post-sentence motion, Appellant raised weight-of-the-evidence claims as to some of his convictions, and asserted that his sentence was excessive. He also challenged Judge Anders' ruling on his motion *in limine*.

Defendant sought to introduce evidence that [two] of the rape victims had prior convictions for prostitution. All of these convictions were for sexual conduct with persons other than Defendant. As in [*Commonwealth v. Jones*, 826 A.2d 900 (Pa. Super. 2003) (*en banc*)], these convictions did not exculpate Defendant and were inadmissible to prove that any of the victims consented to sexual intercourse with Defendant. For similar reasons, the convictions were also inadmissible to test the credibility of the [two] rape victims because the convictions were irrelevant to the defense of consent and were more prejudicial than probative.

*Id.* at 3-4.

On appeal, Appellant renewed, *inter alia*, his challenge to the exclusion of the prostitution evidence, as well as his contention that the verdicts were against the weight of the evidence.

A three-judge panel of the Superior Court affirmed the judgment of sentence in a non-precedential opinion. *See Commonwealth v. Rogers*, No. 342 EDA 2017, 2019 WL 4686960, at *8 (Pa. Super. Sept. 25, 2019). As to the issue involving the shield law, the panel noted that Appellant urged it to reexamine its precedent in *Jones* and *Commonwealth v. Dear*, 342 Pa. Super. 191, 492 A.2d 714 (1985), both of which had held that a complainant's history of prostitution convictions involving third persons, when offered to prove consent with regard to the defendant, is inadmissible under the Rape Shield Law. *See id.* at 202, 492 A.2d at 720; *Jones*, 826 A.2d at 909 (indicating that such evidence "is not probative of the complainant's willingness to commit sexual acts with [the defendant], for hire or for any other reason").[4] The panel stated that it lacked

---

[4] The Superior Court referred to all three adult victims when discussing this claim. *See Rogers*, 2019 WL 4686960, at *4. As noted, however, Appellant only sought to introduce prostitution-history evidence with respect to A.P. and M.H., not C.B. In his brief, Appellant occasionally makes reference to C.B.'s non-prostitution sexual history. *See, e.g.*, Brief for Appellant at 21 (referring to evidence of C.B.'s "relatively contemporaneous sexual encounter with another unknown man"). However, there is no issue before this Court with regard to evidence concerning C.B. *See generally* Brief for Commonwealth at 20 n.4.

the power to overrule a prior decision of the Superior Court except where there is intervening authority by this Court calling that decision into question – and that Appellant did not assert any such intervening authority existed. *See id.* at *4 (quoting *Commonwealth v. Pepe*, 897 A.2d 463, 465 (Pa. Super. 2006)).

The panel also dismissed Appellant's evidentiary-weight claim as waived on the basis that he had failed, in his Rule 1925(b) statement, to specify which verdicts were contrary to the weight of the evidence, or what proofs at trial so contradicted the complainants' testimony that the verdicts shocked one's sense of justice. *See id.* at *5 (quoting *Commonwealth v. Freeman*, 128 A.3d 1231, 1248-49 (Pa. Super. 2015) (indicating a concise statement "which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement")). *See generally Commonwealth v. Brown*, 538 Pa. 410, 438-39, 648, A.2d 1177, 1189 (1994) (noting a new trial may only be granted on a weight-of-the-evidence claim where the "verdict is so contrary to the evidence as to shock one's sense of justice, and the award of a new trial is imperative so that right may be given another opportunity to prevail" (internal quotation marks and citation omitted)).

This Court allowed further review to determine whether the exclusion of evidence concerning A.P.'s and M.H.'s prostitution convictions denied Appellant his right to cross-examine witnesses and present a defense where Appellant claimed at trial that the encounters were "prostitution transactions." *Commonwealth v. Rogers*, ___ Pa. ___, ___, 224 A.3d 1263, 1264 (2020) (*per curiam*). We also granted review as to the question of whether the Superior Court erred in holding that Appellant's evidentiary-weight claim was waived. *See id.*

**II.**

The admissibility of proffered evidence generally depends on its relevance and probative value. *See Commonwealth v. Drumheller*, 570 Pa. 117, 135, 808 A.2d 893, 904 (2002). Even where evidence is probative, it may be excludable for policy reasons. For example, evidence may be barred under the Pennsylvania Rules of Evidence where there is a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. As illustrated by the present case, it may also be excluded based on policy as embodied in a legislative enactment.

Rulings on admissibility are committed to the common pleas court's discretion and will only be reversed on appeal where there is an abuse of discretion. *See Commonwealth v. Maconeghy*, 642 Pa. 770, 778, 171 A.3d 707, 712 (2017). An abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised was either manifestly unreasonable or the product of partiality, prejudice, bias, or ill will. *See Commonwealth v. Spiewak*, 533 Pa. 1, 7 n.4, 617 A.2d 696, 699 n.4 (1992). Here, the contention is that the Rape Shield statute should not have been applied under the circumstances. This raises an issue of law as to which our review is *de novo* and plenary. *See Commonwealth v. Renchenski*, 616 Pa. 608, 614-15, 52 A.3d 251, 255 (2012).

Initially, it is not entirely clear from Appellant's pretrial motion whether he sought permission to introduce documentary evidence concerning the victims' alleged prostitution convictions, or merely permission to cross-examine them about those matters. *See Commonwealth v. Rogers*, Nos. CP-51-CR-5861-2012, *et al.*, Defendant's Motion & Memorandum of Law in Support Thereof to Admit Evidence Pursuant to the Pennsylvania Rape Shield Statute dated Oct. 21, 2015, at ¶6 (C.P. Phila.) (stating in

general terms that "the defense seeks admission of evidence of the complainants' sexual conduct to corroborate [the defense's] contention that in the case[s] of [A.P.] and [M.H.] the sexual contact[s] were consensual acts of prostitution").[5]  The motions court understood the request as directed to cross-examination of the complainants during the prosecution's case in chief, and Appellant did not suggest it was more expansive in response to the court's invitation to make any corrections on the record.  *See* N.T., Feb. 9, 2015 (Motion), at 5-6.  Further, there is nothing in the parties' present advocacy suggesting, based on any identified aspect of the record, that the request should be viewed as having extended beyond cross-examination.  Accordingly, we will proceed from the premise that Appellant challenges the motions court's denial of his request as framed in terms of cross-examination of A.P. and M.H., as well as the Superior Court's affirmance of the denial.[6]

The purpose of the Rape Shield Law has been explained in prior decisions and need not be repeated at length.  To summarize, it is intended to "prevent a trial from shifting its focus from the culpability of the accused towards the virtue and chastity of the victim."  *Commonwealth v. Allburn*, 721 A.2d 363, 366-67 (Pa. Super. 1998) (internal quotation marks and citations omitted).  This protective measure is salient where defendants attempt to utilize evidence of the complainant's alleged promiscuity to bolster their claim of consent.  *See, e.g.*, *Commonwealth v. Widmer*, 446 Pa. Super.

---

[5] The motion, which is undated, was not docketed until October 2015.  However, it is apparent that Judge Anders reviewed it before the pretrial hearing on February 9, 2015.

[6] The parties briefly discussed the possibility that the evidence could also be used to rehabilitate Appellant as a witness should he be cross-examined about his prostitution defense.  *See* N.T., Feb. 10, 2015 (Motion), at 6-8.  In light of our analysis below, the resolution of this appeal would not be different regardless of whether Appellant sought to use the victims' alleged prostitution history in connection with rehabilitation and/or sought to introduce documentary proofs.

408, 422, 667 A.2d 215, 222 (1995), *rev'd on other grounds*, 547 Pa. 137, 689 A.2d 211 (1997).  Thus, the shield law "prevent[s] a sexual assault trial from degenerating into an attack upon the victim's reputation for chastity."  *Commonwealth v. Berkowitz*, 537 Pa. 143, 151, 641 A.2d 1161, 1165 (1994) (citing cases).[7]  It additionally removes obstacles to the reporting of sex crimes.  *Accord Williams v. State*, 681 N.E.2d 195, 200 (Ind. 1997).

With that said, the shield law may not be applied in a manner that violates a defendant's constitutional right to a fair trial, including his right to present evidence and cross-examine witnesses.  *See Spiewak*, 533 Pa. at 11, 617 A.2d at 701 ("Notwithstanding these worthy legislative aims, rules excluding evidence cannot be mechanistically applied to abridge a defendant's right of confrontation by denying admission of highly reliable and relevant evidence critical to his defense.").  In this regard, the Sixth Amendment and Article I, Section 9 of the state Charter both protect a defendant's right to be confronted with adverse witnesses.  *See* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]); PA. CONST. art. I, §9 (same).  The federal right to "be confronted with" such witnesses has been incorporated to the States and includes the right to conduct reasonable cross-examination.  *See Olden v. Kentucky*, 488 U.S. 227, 231, 109 S. Ct. 480, 483 (1988) (*per curiam*); *Davis v. Alaska*, 415 U.S. 308, 315-16, 94 S. Ct. 1105, 1110 (1974); *Commonwealth v. Williams*, 624 Pa. 183, 189, 84 A.3d 680,

---

[7] *See also Priest v. Rotary*, 98 F.R.D. 755, 761 (N.D. Cal. 1983) (recognizing that at one time rape victims "ran the risk of finding their own moral characters on trial during the prosecution of their assailants").  *See generally* 75 C.J.S. *Rape* §96 (2020) (indicating that rape shield laws reflect the view that evidence of a complainant's prior sexual conduct is irrelevant or, if relevant, substantially outweighed by its prejudicial effect); Rachel M. Kane, 5 SUMM. PA. JUR. 2D *Criminal Law* §15:22 (2d ed. & 2020 update) (relating to the general purpose of the rape shield statute).

684 (2014).  This is true of the state provision as well.  *See Commonwealth v. Gribble*, 550 Pa. 62, 83-84, 703 A.2d 426, 437 (1997), *abrogated on other grounds*, *Commonwealth v. Burke*, 566 Pa. 402, 413, 781 A.2d 1136, 1142 (2001).[8]

At the same time, the confrontation right is not absolute.  It guarantees "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  *United States v. Owens*, 484 U.S. 554, 559, 108 S. Ct. 838, 842 (1988) (internal quotation marks and emphasis omitted).  Thus, trial courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986).

In terms of the present controversy, our intermediate court has noted that "Rape Shield laws, if rigidly construed, could impermissibly encroach upon a defendant's right to confront and cross-examine witnesses which is secured under the United States and Pennsylvania Constitutions."  *Commonwealth v. Nieves*, 399 Pa. Super. 277, 287, 582 A.2d 341, 346 (1990).  As a consequence, Pennsylvania courts have sought to balance the defendant's fundamental right to a fair trial, including his right to confront his accuser, against the state's interests embodied in the statute (as outlined above) and in the rules of evidence.  *Accord Commonwealth v. Quartman*, 312 Pa. Super. 349, 353, 458 A.2d 994, 996 (1983).  Thus, courts have found the law unconstitutional as applied in circumstances where the defendant seeks to introduce evidence for reasons

---

[8] As there is no developed advocacy in the parties' briefs suggesting the state guarantee is more expansive than its federal counterpart with regard to the asserted right in this case, for present purposes they will be considered coterminous.

unrelated to impugning the complainant's character, and the probative value of that evidence outweighs the danger of unfair prejudice.

In *Commonwealth v. Majorana*, 503 Pa. 602, 470 A.2d 80 (1983), this Court held that evidence of the complainant's act of consensual intercourse, which was said to have occurred two hours before the time she claimed she was raped, could not be barred by the shield law. The defense evidence was designed to provide an alternate explanation for the presence of live sperm cells in the complainant's vagina as determined by medical testing shortly after the alleged incident. This Court noted that "[a]dmitting such evidence for the limited purpose of denying the act charged properly balances the laudable goals of the statute and an accused's fundamental right to present in defense his own version of the facts under both the Sixth Amendment to the Federal Constitution and Article I, Section 9 of our Pennsylvania Constitution." *Id.* at 605, 470 A.2d at 81.

In *Spiewak*, the defendant was accused of committing a sexual offense with his step-daughter when she was fifteen years old, and the complainant's credibility was a critical issue in the case. Spiewak admitted the encounter occurred but claimed the victim was over sixteen at the time. The prosecution adduced evidence that she had had a sexual encounter with an unnamed older man approximately one month before her sixteenth birthday. In response, the defendant suggested an inference that *that* older man was not him but a friend of his. To support the inference, he sought to cross-examine the complainant concerning her testimony at an earlier proceeding in which she stated that she had engaged in sexual conduct with Spiewak's friend in an incident similar to the one at issue. The trial court disallowed the cross-examination under the shield law, and this Court reversed. Noting *Majorana* had established that the shield law cannot be utilized to prohibit relevant, potentially-exculpatory evidence, the *Spiewak*

Court held that the trial court's ruling abridged the defendant's right to present his own version of the facts in his defense. *See Spiewak*, 533 Pa. at 8-9, 617 A.2d at 699-700.[9] *See generally Commonwealth v. McGowan*, 535 Pa. 292, 295, 635 A.2d 113, 115 (1993) (explaining that proofs tending to show someone else committed the charged offense are relevant and admissible).

Sexual-history evidence has also been permitted when proffered to reveal the complainant's bias or hostility toward the defendant, or that the complainant otherwise had a motive to fabricate or color the accusation. *See, e.g., Commonwealth v. Ruggiano*, 14 A.3d 844, 847 (Pa. Super. 2010) (holding that the Rape Shield Law did not preclude sexual-history evidence offered to show that the witness sought to falsely accuse the defendant as a way of deflecting blame for the witness's own conduct), *vacated on other grounds*, 611 Pa. 368, 26 A.3d 473 (2011) (*per curiam*).[10]

In *Commonwealth v. Black*, 337 Pa. Super. 548, 487 A.2d 396 (1985), for example, the defendant was accused of having sexually victimized his 13-year-old daughter. Black testified that the alleged incident never occurred. He also sought to show his daughter had a motive to fabricate the story. In particular, he sought to cross-examine her concerning her alleged ongoing consensual sexual relationship with her 15-year-old brother, which ended when the brother left the family home. This line of inquiry supported the defense theory because: the daughter made her first complaint

---

[9] The *Spiewak* Court did not expressly state that application of the statute to bar the proffered evidence was unconstitutional. The implication is clear from context, however, because *Spiewak* relied on *Majorana* – which reached its holding based on the Sixth Amendment and Article I, Section 9 – and there is no evident non-constitutional basis for the *Spiewak* Court not to have applied the shield law.

[10] In its *per curiam* order, this Court acknowledged that an exception to the Rape Shield Law exists in relation to evidence showing the bias or motive of the witness in question. *See id.* at 368, 26 A.3d at 473.

against Black shortly after the brother left home due to violent arguments the brother was having with Black; the complainant admitted she wanted her brother to return home; and the brother inquired concerning moving back home once Black was arrested and removed. As the extent of the complainant's potential bias against Black – and thus her motive to fabricate – could only be explored through such cross-examination, the intermediate court held that the cross-examination was permissible notwithstanding the shield law in view of the defendant's Sixth-Amendment right to confront adverse witnesses. *See id.* at 558, 548 A.2d at 401-02 (observing, as well, that the cross-examination was not offered to show general moral turpitude or defect of character); *see also Commonwealth v. Eck*, 413 Pa. Super. 538, 550-51, 605 A.2d 1248, 1255 (1992) (where the jury had to weigh the credibility of the victim and the defendant, finding error in the trial court's exclusion of evidence of the victim's sexual history which could have revealed a motive to invent the charges (quoting *Commonwealth v. Erie*, 361 Pa. Super. 44, 52-53, 521 A.2d 464, 468 (1987))); *Commonwealth v. Fernsler*, 715 A.2d 435, 442 (Pa. Super. 1998) (permitting sexual-history evidence which could demonstrate the accused had a motive to fabricate the allegations to gain favorable treatment while in a juvenile sex-offender program).[11]

On the threshold question of whether the prostitution evidence promoted by Appellant is statutorily precluded, we note initially that some of the evidence pertained to alleged instances of prostitution in the post-offense timeframe. *See supra* note 2. An issue thus arises whether the evidence concerns "past sexual conduct" for purposes of the shield law. The statute is ambiguous on this point because, as a textual matter, "past" could reasonably mean either prior to trial or prior to the offense. *See Trizechahn*

---

[11] The *Black* and *Eck* opinions were cited with approval in this Court's *per curiam* order in *Ruggiano*. *See supra* note 10.

*Gateway LLC v. Titus*, 601 Pa. 637, 653, 976 A.2d 474, 483 (2009) (explaining that an ambiguity exists when there are at least two reasonable interpretations of the text). We will therefore ascertain the meaning that best aligns with legislative intent. *See* 1 Pa.C.S. §1921(a) (indicating that the object of all interpretation and construction of statutes is to ascertain and effectuate legislative intent); *Commonwealth v. Cullen-Doyle*, 640 Pa. 783, 787, 164 A.3d 1239, 1242 (2017) (same).[12]

It makes little difference in terms of the shield law's purposes whether the evidence in question relates to conduct which occurred before or after the alleged offense. The shield law reflects the General Assembly's judgment that, in relation to the issue of consent with the defendant, a complainant's sexual history with third parties should not be aired. This objective would be ill served if the victim's excludable sexual history were limited to that which occurred prior to the alleged offense. This is true because evidence of post-offense sexual conduct could lead to the same types of distractions as proofs concerning pre-incident conduct – most notably, the improper shifting of the trial's focus away from the defendant's guilt or innocence and toward the complainant's character. *See generally Del. Cty. v. First Union Corp.*, 605 Pa. 547, 561, 992 A.2d 112, 121 (2010) (noting that the practical results of a particular interpretation may be considered when construing statutory text (quoting *Lehigh Valley Coop. Farmers v. Bureau of Emp't Sec.*, 498 Pa. 521, 526, 447 A.2d 948, 950 (1982))). Additionally, although the statute appears in the Crimes Code, it is remedial rather than penal. Consequently, the textual reference to the alleged victim's "past" conduct should be read broadly. *See* 1 Pa.C.S. §1928(c) (directing that, subject to certain enumerated

---

[12] Appellant does not advance that the General Assembly intended for acts of illegal prostitution to be excluded from the statute's protective scope, *see* Brief for Appellant at 32 n.4 (indicating that Appellant "takes no position" on that question), and there is no reason based in its text to reach that conclusion.

exceptions not implicated here, statutory provisions should be "liberally construed to effect their objects and to promote justice"). Understood broadly, "past sexual conduct" signifies sexual conduct which occurred at any time in the past, meaning, prior to trial rather than solely prior to the alleged sexual assault.

Under our broad construction, there is little doubt that the proofs offered by Appellant were statutorily precluded. Assuming the complainants engaged in prostitution with third parties at any time before trial, those encounters qualify as their "past sexual conduct," and there is no suggestion that Appellant himself was involved in any of the prior acts of prostitution.

Given this state of affairs, Appellant seeks admission of the evidence on constitutional grounds by analogizing the present case to those in which courts have determined that otherwise-barred proofs may be admitted as bearing on the question of the complainant's credibility. He argues that here, the defense theory – consistent with what Appellant told the police – was that A.P. and M.H. gave their financially-induced consent to the encounter, and that he should have been allowed to put evidence before the fact-finder that they had engaged in prostitution with others. Summarizing a litany of extra-jurisdictional cases which have announced a variety of rules and applied them with varying results, *see* Brief for Appellant at 27-48, Appellant contends we should follow the lead of states that have adopted a liberal approach to admissibility in order to avoid injury to his constitutional rights. *See id.* at 48-49.

Appellant additionally maintains that the evidence's probative value outweighed its prejudicial effect in the circumstances. He emphasizes that the balancing test in reality deals, not with prejudice as such – as most relevant trial evidence is, by design, prejudicial to the opposition – but with the risk of *unfair* prejudice. *See* Pa.R.E. 403 (permitting the exclusion of relevant evidence if its probative value is outweighed by a

danger of, among other things, unfair prejudice). Appellant indicates that, to embody that risk, the evidence must "inflame the mind" of the fact-finder. Brief for Appellant at 50 (quoting *Eck*, 413 Pa. Super. at 549, 605 A.2d at 1254 (stating that otherwise-admissible evidence may be excluded if "it would so inflame the minds of the jurors that its probative value is outweighed by unfair prejudice")). He argues that that standard was not met here as the complainants' alleged involvement in the sex-for-hire trade was "just business" and unrelated to an accusation of promiscuity. *Id.* at 52.

Appellant indicates that the reported Pennsylvania decision which is most relevant to the present matter is the intermediate court's ruling in *Dear*, and he urges this Court to disapprove or limit that decision. *See id.* at 54. We will therefore briefly review that decision.[13]

In *Dear*, the defendant was charged with rape. He testified that he was solicited by the victim and knew her to be a prostitute. He sought to introduce proofs that the victim had three prior convictions for solicitation of prostitution in the same area where the alleged rape occurred. The common pleas court excluded the evidence under the shield law, and Dear was found guilty. On appeal, the Superior Court observed that the legislative objective of protecting a complainant from undue harassment must be balanced against the defendant's fundamental right to a fair trial. In such balancing, the court indicated, a victim's sexual conduct with third parties is generally of only slight relevance to the issue of consent with the defendant. Thus, the court continued, absent extraordinary circumstances it should be excluded per the statute. *See Dear*, 342 Pa.

---

[13] Appellant also asks this Court to disapprove or limit the Superior Court's decision in *Jones*. *See id.* That dispute primarily dealt with the statutory-construction issue which we have resolved above – *i.e.*, whether "past" means prior to trial or only prior to the alleged offense. *See Jones*, 826 A.2d at 903. Consistent with our determination, the court held that "past sexual conduct" subsumes all such conduct prior to trial. *See id.* at 908.

Super. at 198, 492 A.2d at 718 (quoting *Commonwealth v. Boone*, 319 Pa. Super. 358, 360-62, 466 A.2d 198, 199-200 (1983)). As no such circumstances existed, the court affirmed the exclusion of the evidence. *See id.* at 199, 492 A.2d at 718. The court also distinguished *Black*, expressing that that case concerned proofs tending to demonstrate the complainant's bias and hostility toward the defendant, rather than consent. *See id.* at 201-02, 492 A.2d at 719-20.

The question becomes, then, whether the shield law's prohibition must yield, under the Sixth Amendment and Article I, Section 9, to Appellant's ability to question A.P. and M.H. concerning their acts of prostitution with third parties. As reflected in the cases reviewed above, the circumstances in which Pennsylvania courts have admitted evidence notwithstanding the shield law involve proofs offered to demonstrate factual premises other than consent – such as that the conduct was committed by someone other than the defendant, the complainant harbored bias and hostility toward the defendant which would induce him or her to fabricate or color testimony, or that the complainant otherwise had an ulterior motive to manufacture charges.

In some limited situations, prostitution evidence may be germane to these other issues. In *Commonwealth v. Joyce*, 415 N.E.2d 181 (Mass. 1981), for instance, the police approached a car in which the defendant and the complainant were both undressed, and the latter accused the former of raping her. The defense theory was that the complainant's previous prostitution arrests – which involved factual circumstances similar to the incident in question – had occurred shortly before the incident, and the complainant was motivated to claim (falsely) that she was raped in order to avoid yet another prostitution arrest. *See id.* at 187.

This matter is not at all like *Joyce*. Here, both A.P. and M.H. initiated contact with the police, and the trial evidence indicated they had been physically beaten shortly

before reporting the crimes. *See* N.T., Feb. 9, 2015 (Trial), at 68-70 (M.H.); N.T., Feb. 10, 2015 (Trial), at 133-36 (A.P.).[14] Thus, Appellant's objective in promoting the evidence is limited to suggesting that, because the victims had been engaged in prostitution in the same geographic area on other occasions, the fact-finder should give more weight to his testimony that his own encounters with them entailed prostitution. The prostitution evidence, therefore, amounted to propensity evidence – that is, evidence of the complainants' prior bad acts promoted in an effort to show that, on the occasion in question, they acted in accordance with their character. While propensity evidence may have some limited probative value, it is inadmissible to demonstrate a person's character in order to show conduct conforming therewith. *See* Pa.R.E. 404(b); *Commonwealth v. Busanet*, 618 Pa. 1, 43, 54 A.3d 35, 61 (2012) (citing *Commonwealth v. Sherwood*, 603 Pa. 92, 114, 982 A.2d 483, 497 (2009)).

Appellant denies that he sought introduction of the evidence solely to establish that the complainants acted in conformity with their conduct on other occasions. He couches his reason for promoting the prostitution evidence as supporting his "defense of financially-induced consent." Brief for Appellant at 17. The argument fails, however, as it is internally inconsistent: the evidence was relevant only insofar as the complainants gave their "financially-induced consent" to third parties on other occasions. Indeed, "absent [Appellant's] disavowed propensity theory, he is left with no theory of relevance at all." Amicus Brief of the Office of Attorney General, at 4.

In light of the above, we conclude, consistent with *Dear*, that the proofs offered by Appellant are the very types of items that the Rape Shield Law is designed to preclude. They would cast aspersions upon the moral character of the complainants

---

[14] The evidence of the complainants' injuries is in obvious tension with the premise that the encounters were consensual.

and do little to prove consent at the relevant time – even if the victims had engaged in prostitution on other occasions. *Accord State v. Higgins*, 821 A.2d 964, 972 (N.H. 2003) (indicating that a person's "status as a prostitute" does not imply that "she will accept every opportunity that comes along to engage in sexual relations or relent to the desires of any paying customer, regardless of her motivation for engaging in prostitution in the first instance"). *See generally State v. Green*, 260 S.E.2d 257, 261 (W. Va. 1979) (observing that a victim's "previous sexual conduct with other persons has very little probative value about her consent to intercourse with a particular person at a particular time"). Further, the evidence was not offered to prove that another person committed the crimes or that the complainants harbored hostility toward Appellant or otherwise had a motive to fabricate or exaggerate the charges.

Finally, Appellant was not prohibited from establishing a consent defense. He testified concerning the events and, as noted, portrayed them all as consensual. On this record there is no reason to believe that the fact-finder was impeded in reconciling the conflict between Appellant's testimony and the other trial evidence based on judgments concerning the credibility or veracity of that evidence. In brief, the shield law barred the evidence and the statutory prohibition was not overridden in this case by Appellant's constitutional rights.

## III.

The last issue is whether the Superior Court erred when it found that Appellant's weight-of-the-evidence claim was waived for lack of development in his Rule 1925(b) concise statement. *See* Pa.R.A.P. 1925(b). As discussed, Appellant included such contention in his post-sentence motion. *See supra* note 3. In that motion, he stated:

> 7. [Appellant] contends that the testimony of [A.P.] was so contradictory and inconsistent that the verdict was against the weight of the evidence. [A.P.] gave two different accounts of how she arrived at the location where

she claimed to be assaulted, two different locations where the assault occurred, two different explanations for how she sustained her injuries, and inconsistent testimony of how or when her property was lost or taken.

8. [Appellant] likewise contends that the testimony of [M.H.] was against the weight of the evidence. The testimony of [M.H.] was incredible based on inconsistencies, her drug usage, and that [sic] it generally made no sense. [Appellant] contends that the circumstances of how and when [M.H.] reported the incident further call her credibility into question. . . .

9. [Appellant] contends that the evidence presented as to [C.B.] was . . . against the weight of the evidence. [Appellant] concede[d] that he had consensual sexual relations with [C.B.], which he claimed was as a result of an agreement to commit prostitution, but denied beating her. During her testimony, [C.B.] maintained that she did not know her assailant and that their conversation was limited prior to the assault. It is undisputed that [C.B.] was "a little tipsy" celebrating her birthday, and lived a few blocks away from the area of the physical assault. [Appellant] spoke to the police and testified that he told them her name, that it was her birthday, that she had been drinking, and that the sexual interaction happened not in an alley, but on a porch, in a location that [Appellant] contends was very close to [C.B.'s] home. [Appellant] also gave the amount of money paid to [C.B.] as $40.00, taken from the MAC machine as described by [C.B.]; this was coincidentally the amount of money [C.B.] claimed was taken. When questioned by police, [Appellant] gave a statement containing all of the information about [C.B.], which he testified to at trial. [Appellant] contends that the only way he could possibly have had all of that information was that he had indeed had some protracted conversation with her on the date in question.

10. [Appellant] contends that the agreed upon evidence, that DNA comparisons showed the presence of DNA in a sperm fragment from an unidentified male, lends credibility to the proposition that although [Appellant] engaged in sexual intercourse with [C.B.], so did another unidentified male. [Appellant] contends that it was the other male who also beat [C.B.] again consistent with [Appellant's] statement to the police and testimony at trial. The question of whether [C.B.] was sexually active at the time prior to the assault was initially answered differently from the trial, when the prosecution attempted to discount the unknown sperm fraction. . . .

Appellant's Post-Sentence Motion at ¶¶7-10.

In his Rule 1925(b) statement, he did not repeat the above details, opting instead to articulate the issue in a substantially-shortened form:

> The verdicts were so contrary to the weight of the evidence as to shock one's sense of justice, where [A.P.'s], [M.H.]'s and [C.B.]'s testimony was vague, inconsistent and incredible. New trials should have been granted in the interests of justice so that right may prevail, as the fact finder's verdict based upon such testimony was speculative and conjectural.

*Commonwealth v. Rogers*, Nos. CP-51-CR-5861-2012, *et al.*, Final Statement of Errors Complained of on Appeal (C.P. Phila. Apr. 10, 2018), at ¶2. The Superior Court faulted Appellant for failing to specify which verdicts were against the weight of the evidence, or to offer specific reasons why those verdicts were contrary to the weight of the evidence. *See Rogers*, 2019 WL 4686960, at *5.[15]

Appellant complains that the Superior Court's waiver ruling was based solely on the face of his Rule 1925(b) statement. As his post-sentence motion was included in the record, he argues, it should have been considered in tandem with his concise statement so as to avoid waiver, particularly as the trial court had authored an opinion addressing the claim on its merits. In this respect, Appellant notes the purpose of Rule 1925(b) is to facilitate appellate review when the common pleas court intends to issue an opinion addressing the substance of any issue raised in the appeal. He quotes from *Commonwealth v. Silver*, 499 Pa. 228, 452 A.2d 1328 (1982), which stated:

> The statement provided for [in Rule 1925(b)] is intended to aid the trial court in the preparation of an opinion where the basis of an appeal is unclear after post-verdict motions have been disposed of. The waiver provision of the Rule is properly invoked only where failure to file a statement or omission from a statement of issues raised on appeal defeats effective appellate review. Mere omission from the statement of matter complained of on appeal of an issue preserved by post-verdict motion, argued before and disposed of by the trial court, and briefed on appeal, does not, in itself, defeat effective review of that issue.

*Id.* at 238, 452 A.2d 1333.

---

[15] Appellant was convicted of more than three dozen different offenses in relation to the three victims mentioned in his concise statement. *See Rogers*, Nos. CP-51-CR-5861-2012, *et al.*, *slip op.* at 1 n.1 (Woelpper, J.).

For its part, the Commonwealth argues – and references several reported Superior Court decisions in support – that under the intermediate court's precedent, vague and undeveloped evidentiary-weight claims are considered waived. It adds that even if Appellant prevails on this issue, he will only be entitled to a remand to the intermediate court to address the merits of his claim.

The Commonwealth's substantive argument is not entirely responsive, as it does not contend – nor does our own review suggest – that in any of the cases it cites the trial court issued an opinion resolving the merits of the claim the Superior Court deemed waived.[16] Moreover, the Commonwealth does not reference any decision of this Court addressing waiver in circumstances similar to those of the present case.

At the same time, Appellant overstates his position; he fails to recognize that, after *Silver* was decided, this Court set forth a rule contradicting any suggestion that failure to include an issue in a Rule 1925(b) statement does not always result in waiver. In fact, sixteen years after *Silver*, the Court held that, going forward, if a trial court orders a party to file a concise statement, any issue not raised in the statement is waived, *see Commonwealth v. Lord*, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998), and the precept was eventually incorporated into the rule itself. *See* Pa.R.A.P. 1925(b)(4)(vii). That development is potentially relevant because a claim or argument that is substantially underdeveloped can amount to "the functional equivalent of no argument at all," and on that basis be deemed waived. *Commonwealth v. D'Amato*, 579 Pa. 490, 504, 856 A.2d 806, 814 (2004); *accord Commonwealth v. Dowling*, 778 A.2d 683, 686-87 (Pa. Super. 2001) (suggesting that an overly-vague concise statement is the equivalent of no statement at all).

---

[16] In one of the cases, the Superior Court explained that the trial court summarily dismissed the claim without discussing the evidence. *See Commonwealth v. Seibert*, 799 A.2d 54, 62 (Pa. Super. 2002), *cited in* Brief for Appellee at 52.

In all events, it bears noting that the purpose of Rule 1925 is to facilitate appellate review and to provide the parties and the public with the legal basis for a judicial decision. *See Commonwealth v. Parrish*, ___ Pa. ___, ___, 224 A.3d 682, 692 (2020) (quoting *Commonwealth v. DeJesus*, 581 Pa. 632, 638, 868 A.2d 379, 382 (2005)). If that basis is evident from the record, the trial court need not issue an opinion explaining it. *See* Pa.R.A.P. 1925(a) (requiring an opinion only where "the reasons for the order [appealed from] do not already appear of record"). The function of the concise statement is to clarify for the judge who issued the order the grounds on which the aggrieved party seeks appellate review – so as to facilitate the writing of the opinion. *See* Pa.R.A.P. 1925(b) ("If the judge entering the order giving rise to the notice of appeal . . . desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record . . . a concise statement of the errors complained of on appeal[.]").

In *Commonwealth v. Laboy*, 594 Pa. 411, 936 A.2d 1058 (2007) (*per curiam*), this Court faced a situation comparable to the present controversy. The defendant's Rule 1925(b) statement was exceedingly brief in setting forth an evidentiary-sufficiency claim. Nevertheless, the common pleas court issued a Rule 1925(a) opinion resolving the claim on its merits. The Superior Court found the claim waived due to its brevity and did not address its merits. This Court held that the Superior Court should have afforded the requested sufficiency review, as the trial transcript was short, it was fairly evident from context that the sole legal issue was whether the defendant was vicariously liable for his co-defendant's actions, and "the common pleas court readily apprehended Appellant's claim and addressed it in substantial detail." *Id.* at 415, 936 A.2d at 1060.[17]

---

[17] This Court has referenced *Laboy* in summarily granting allocatur, vacating the Superior Court's decision, and remanding for a merits disposition of certain issues. *See*, *e.g.*, *Commonwealth v. Malave*, 98 Pa. 494, 957 A.2d 1175 (2008) (*per curiam*).

Here, the trial transcript is admittedly much longer than in *Laboy*. Nevertheless, the weight-of-the-evidence claim was readily understandable from context. Appellant's theory, for which he provided his own supporting testimony, was that he was innocent of all charges in relation to the three adult victims because he did not physically attack or steal from any of them, and his intercourse with all of them was consensual. Further, and as noted, in his post-sentence motion Appellant articulated the evidentiary-weight claim at some length as to the three adult victims, and those were the same individuals he mentioned in his Rule 1925(b) statement. The common pleas court summarized the victims' credited testimony contradicting Appellant's theory and determined that the verdicts were not contrary to the weight of the evidence. Thus, as in *Laboy*, the trial court had no difficulty apprehending the claim as set forth in the concise statement and addressing its substance.

This latter circumstance is particularly salient because, as explained, the concise statement's purpose is to assist the trial judge in apprehending the issues and authoring an opinion accordingly for the benefit of the parties, the appellate court, and the public. If a concise statement's explanation of a particular issue is overly long, moreover, the appellant runs the risk of invoking the waiver rule on that basis. *See* Pa.R.A.P 1925(b)(4)(iv) (prohibiting "lengthy explanations as to any error"); 1925(b)(4)(vii) (providing, among other things, that failure to raise issues in accordance with paragraph (b)(4) results in waiver); 1925(b)(4)(ii) (mandating issues be stated concisely); *cf. Eiser v. Brown & Williamson Tobacco Corp.*, 595 Pa. 366, 384 n.19, 938 A.2d 417, 428 n.19 (2007) (plurality) (observing that Rule 1925 as revised "now explains that frivolous or redundant issues continue to provide grounds for waiver, and clarifies that a lengthy explanation of the claimed error(s) should not be provided in the statement").

In light of these principles, we find that the brevity of Appellant's weight-of-the-evidence claim as set forth in his concise statement represents a good-faith attempt to comply with Rule 1925's concision requirement, and that it did not prevent meaningful appellate review.  That being the case, the intermediate court should have considered the claim on its merits.  *Accord Commonwealth v. Smyser*, 195 A.3d 912, 916 (Pa. Super. 2015) (applying *Laboy* to reach an issue set forth in a "boilerplate" concise statement where the trial court readily apprehended the issue).[18]

## IV.

For the reasons given above, the Superior Court's ruling is affirmed insofar as it upheld the common pleas court's denial of Appellant's motion *in limine*, thereby excluding from trial any evidence concerning the alleged prostitution convictions of A.P. and M.H.  The intermediate court's order is vacated, however, to the extent it found Appellant's weight-of-the-evidence claim waived, and the matter is remanded for a merits disposition of that claim.

Chief Justice Baer and Justices Todd, Donohue, Dougherty and Wecht join the opinion.

Justice Mundy files a concurring opinion.

---

[18] Our holding does not purport to alter this Court's precedent indicating that, if the appellant fails to file a timely concise statement in compliance with the trial court's directive – or entirely omits certain issues from an otherwise compliant statement – the issues are waived regardless of whether the trial court issued a Rule 1925(a) opinion addressing them.  *See Commonwealth v. Hill*, 609 Pa. 410, 426-27, 16 A.3d 484, 493-94 (2011).  *Hill* noted that the only exception is for issues subject to automatic statutory review in a direct capital appeal.  *See id.* at 425, 16 A.3d at 492.